(74 App. Div. 238.)

### CITY OF NEW YORK v. BAIRD et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

**1. BOND—TO PAY JUDGMENT—NECESSITY OF APPEAL.**

Twenty-five thousand dollars, due a contractor for laying water mains for a city under a contract providing that he should indemnify it for any damages it might be obliged to pay for accidents from negligence in performance of the work, and that so much money due him thereunder as should be considered necessary might be retained till settlement of claims for damages, was paid him, after commencement of action against the city and contractor, by person injured, for $50,000 damages, on his giving a bond for $10,000, conditioned to become void if he pay "any judgment" obtained against the city in such action. Held, that though at the time the bond was given the contractor stated that he did not think he was liable under the claim, and would fight it to a finish, the city was not obliged to appeal from a judgment against it; and that a judgment of $22,000 having been obtained in the action without fraud or collusion between the city and the plaintiff therein, and the city and contractor having appealed, and said plaintiff having offered to settle for $17,500, and the contractor not having offered to secure the city against damage from refusing the offer, it might make the settlement against his protest, and recover on the bond.

O'Brien and Hatch, JJ., dissenting.

Appeal from trial term, New York county.

Action by the city of New York against William P. Baird and another. From an order setting aside a verdict rendered by direction of the court, and granting a new trial (72 N. Y. Supp. 606), plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Terence Farley, for appellant.

J. Woolsey Shepard, for respondents.

INGRAHAM, J. At the end of the trial, the court directed a verdict for the plaintiff for $10,000. Subsequently, on motion to set aside the verdict upon the judge's minutes, the verdict was set aside, and a new trial granted. Although counsel for the defendants at the trial asked to submit certain questions to the jury, it seems to be conceded upon this appeal that there is no question of fact involved. The defendant Baird had a contract with the city of New York for laying water mains in Fifth avenue, from Fourth street to Eightieth street. In this contract it was agreed that he would indemnify and save harmless "the party of the first part [plaintiff] against and from all suits and actions of every name and description brought against them, and all costs and damages to which they may be put, for or on account or by reason of any injury or alleged injury to the person or property of another, resulting from negligence or carelessness in the performance of the. work, or in guarding the same, * * * and the said party of the second part [defendant Baird] hereby further agrees that the whole or so much of the moneys due to him, under and by virtue of this agreement, as shall or may be considered necessary by the commissioner of public works, shall and may be retained by the said parties of the first part until all such suits or claims for damages as aforesaid shall have been settled, and evidence to that effect furnished to the satisfaction of the said commissioner." The court of appeals has held, in Mansfield v. City of New York, 165 N. Y. 208, 58 N. E. 889, that a clause like the one under consideration, in a contract between the city and a contractor, is for the benefit of the city, and that the city was entitled to retain sufficient of the moneys due to the contractor to indemnify it against any claim made against it by reason of the contractor's negligence. Baird commenced and completed the work under this contract, in the course of which one Kelly sustained injuries by falling into a trench excavated by Baird in the performance of this work. Kelly commenced an action against the city of New York and Baird to recover $50,000 damages, sustained by him in consequence of this accident. In the meantime, certain payments had become due to Baird under the contract, which the comptroller refused to pay, upon the ground of Kelly's claim against the city. Baird, being anxious to obtain his money, commenced negotiations with the comptroller and the corporation counsel, which resulted in an understanding that the payments would be made upon Baird's giving a bond to secure the city. At the time the comptroller refused to pay, counsel for Baird had an interview with him concerning the payment due to Baird under the

contract. At that interview, the comptroller claimed the right to hold $50,000 of the money coming to Baird until this claim of Kelly's against the city should be settled. Counsel for Baird having protested against the comptroller's holding up such an amount, he was referred by the comptroller to the corporation counsel. At an interview with Mr. Blandy, assistant corporation counsel, he suggested that a bond should satisfy the comptroller, and Mr. Blandy finally consented to accept a bond in the penalty of $10,000, and a bond was accordingly executed by the defendants, which was accepted by the comptroller, and the money due under the contract was paid to Baird. At the time this bond was given, counsel for Baird stated to the comptroller that Baird did not intend to pay any amount unless he was obliged to; that he did not think he was liable under the claim made by Kelly; and that Baird would fight that claim to a finish, and would take the case as far as he could go with it. By this bond, these defendants were held and firmly bound unto the city of New York in the sum of $10,000. The condition of the bond recited the contract between Baird and the city; that a claim had been filed against the city of New York by Kelly for $50,000 for personal injuries; and that, at the time such injuries were received by Kelly, Baird had made the excavation complained of, and was still engaged in the performance of the contract; and the condition of the bond was that "if the above-bounden William P. Baird and the Fidelity and Deposit Company of Maryland, or either of them, shall pay and fully satisfy any judgment which may be obtained by the said Thomas Kelly against the city of New York, for the personal injuries received by him as hereinbefore set forth, together with all costs and disbursements which may arise in such a suit, not exceeding the sum of ten thousand dollars ($10,000), then this obligation to be void; otherwise to remain in full force and effect." This bond was dated February 2, 1898, and was filed in the office of the comptroller on February 3, 1898. At the time this bond was filed, there was due to Baird upwards of $25,000, which had been due since January 18, 1898; and this sum was paid to him on February 11, 1898, after the bond in suit was filed with the comptroller.

The action of Kelly against the city subsequently proceeded to trial, and resulted in the entry of judgment in favor of Kelly, and against the city of New York, for the sum of $22,553.36, on May 5, 1899. After this judgment was entered, the city of New York and Baird appealed, and the case on appeal was prepared and served upon the plaintiff's attorney. Subsequently, Mr. Blandy, assistant corporation counsel, who had the matter in charge for the city, wrote a letter to Baird's attorney, in which he stated that Kelly's attorney had opened negotiations to compromise, and had offered to accept $18,500 in full settlement of this judgment. In consequence of this letter, Baird's attorney and Mr. Blandy had several interviews, at which was discussed the prospect of succeeding upon the appeal. The position at that interview as taken by Mr. Blandy was that the city of New York was not bound to continue the appeal; that, if the judgment was reversed, upon a new trial the defendants could hope for a better result; and that the evidence of

the city's negligence and of Baird's negligence was overwhelming. There were several subsequent interviews. The final result was that Mr. Shepard said that Baird would not pay; and the city finally paid to Kelly the sum of $17,500, and Kelly satisfied the judgment against the city. No notice was given to the surety company about this settlement. Mr. Shepard testified that he protested against this settlement by the city, expressing confidence in the reversal of the judgment.

The situation that existed when the city made this settlement was that there was a judgment against it for over $22,000, for which it held the bond sued on in this case to the extent of $10,000, leaving unsecured, so far as appears, a liability of the city of upward of $12,000. To continue this litigation would have involved the city in the risk of the affirmance of the judgment, which would have made it liable for the full amount, together with the costs of appeal and interest; or, in case of the reversal of the judgment and a new trial, there would have been the risk of another verdict against the city; and there is nothing to justify an assumption that the city would have been more successful upon the second trial than upon the first, in case a new trial had been ordered. There was no offer on behalf of Baird to indemnify the city from any damage sustained if the offer of settlement was refused, for the future costs and expenses of the prosecution of the appeal, or for any additional liability that would be imposed upon the city on a new trial. By the settlement, the city reduced its liability about $5,000, and, although Baird's attorney was notified that the city was about to settle the judgment for $17,500, there was no offer by Baird to furnish any indemnity to the city in case a greater liability than the $17,500 should be imposed upon the city by refusing to accept the settlement.

The question is presented whether the city was bound to continue the appeal, and subject itself to this largely increased liability, for Baird's benefit, when he was concededly responsible for the damage that the city would have to pay, without his furnishing or offering to furnish any indemnity to the city, or securing it in any way. As I understand it, Baird's liability to the city is not disputed. If the city had retained in its possession the $25,000 that was due to Baird at the time this bond was given, there could be no question but that the city would have been protected; and the city had the right to retain that money. At Baird's request, and for his benefit, this bond was substituted in place of the money held by the city to indemnify it for this liability imposed upon the city by Baird's negligence. He obtained this money when the bond in suit was given, and by it these defendants bound themselves to pay to the city the sum of $10,000, subject to the condition that, if the obligors should pay and fully satisfy any judgment which might be obtained by Kelly against the city of New York for the personal injuries received by him, then the obligation was to be void. That there was a judgment obtained by Kelly against the city of New York, upon the claim mentioned in this bond, is conceded. That neither Baird nor the surety company paid that judgment is also conceded. There

77 N.Y.S.—29

is certainly no provision in this bond which in terms requires the city to prosecute an appeal from a judgment when obtained by Kelly. According to the terms of the bond, therefore, the condition not having been performed, the obligation remains in full force and effect. If the city had neglected to take an appeal, and an execution had been issued upon this judgment and the amount collected, the defendants would certainly have been liable upon their bond. Because the city did subsequently take an appeal for its own benefit, but was able, by an advantageous settlement, to reduce its liability, and pay the judgment, in the absence of any obligation of the city to appeal, I can see no principle upon which the city could be said to have violated any obligation that it had incurred, so as to discharge the parties to the bond. There is nothing in the bond which imposed an obligation upon the city even to defend the action brought by Kelly. It did not so agree. The obligation of these defendants to pay the city this sum of money was absolute, conditioned upon but one contingency, and that is the payment by the defendants of any judgment that Kelly should obtain against the city. Kelly obtained a judgment; these defendants did not pay it; and there is certainly nothing on the face of the bond, nor in the facts as disclosed by the record, that makes this bond void by reason of a failure of the city to take means to avoid or reverse a judgment thus obtained.

The defendants rely on a class of cases in which it has been held that where an undertaking is given under the provisions of the Code of Civil Procedure, by which the sureties bind themselves to pay a judgment if it should be affirmed, it applies to an affirmance by the court of last resort. But I cannot see that these cases at all apply. The condition of this obligation does not provide for an appeal, and there is nothing to show that the parties contemplated an appeal. The obligation of both defendants was conditioned upon their paying any judgment that Kelly should obtain against the city. It was not the judgment of the court of appeals or of the appellate division, but "any judgment"; and there was, I think, a breach of this condition when Kelly obtained a judgment which the defendants did not pay. This conclusion is sustained by Conner v. Reeves, 103 N. Y. 527, 9 N. E. 439, and Wheeler v. Sweet, 137 N. Y. 435, 33 N. E. 483. There is no claim that there was fraud or collusion between the city and Kelly by which this judgment had been obtained; and if the defendants had desired to secure the right of an appeal they should have reserved that right in the bond.

I think, therefore, that the order appealed from should be reversed, and the motion to set aside the verdict and for a new trial denied, with costs to the plaintiff.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur. O'BRIEN and HATCH, JJ., dissent.

O'BRIEN, J. (dissenting). The construction given by Mr. Justice INGRAHAM to the terms of the bond seems to me to be both unreasonable and unjust.

If resort may be had to evidence aliunde, then it appears without contradiction that Baird not only denied all liability for the Kelly claim, but expressed a determination to fight it to the court of last resort. This, the comptroller and assistant corporation counsel knew before, when, and after the bond was executed. And that the judgment spoken of in the bond was intended to refer to the final judgment is shown by the practical construction which the parties placed upon it. The city and Baird took appeals, consulted together, and both concluded that there were errors on the trial of a character that must result in a reversal of the judgment. Tired of the litigation, or thinking, perhaps, that no better results would be obtained on a new trial, the assistant counsel to the corporation changed front, and insisted, against the protest of Baird, in settling. If it be urged that the city was not obliged to run the risk of a greater recovery, and that Baird should have tendered a bond for a greater amount, the answer, it seems to me, is found in the fact that under the terms of the original contract between the parties, upon which Baird gave sureties, there was a provision that he should indemnify the city for any damages which it might be obliged to pay for accidents or negligence. Besides, if the city wished for additional security, it was bound to demand it, and, before entirely ignoring Baird's rights, it should have notified Baird, and insisted that such should have been given, and that unless given within a time to be named the city would settle. There may be doubt, due to the language used in the bond; but, if this doubt can be solved by outside evidence, then it appears the intention of the parties was that Baird should be assisted in fighting the claim "to a finish"; and the only mistake made was in the city's exacting a bond for too small an amount, but this gave it no right, against Baird's protest, to settle, and thus precipitate his liability on the bond.

I therefore dissent.