### CITY OF NEW YORK v. BAIRD et al.

(Supreme Court, Appellate Division, First Department. June 11, 1909.)

1. PRINCIPAL AND SURETY (§ 115*)—DISCHARGE OF SURETY—RELEASE OF OTHER SECURITY.

A contractor's contract with a city, as secured by bond, provided that he should properly guard the excavation on the street made by him and that he would indemnify the city against all damages by reason of injuries to persons resulting from negligence of the contractor, and that so much of the money due the contractor as might be considered necessary by the commissioner of public works should be retained by the city until all such claims for damages should be settled. The city had retained $25,000, and, a suit having been brought against the city for injuries from the excavation, the city turned over to the contractor the amount upon his executing an indemnity bond for $10,000. Judgment was rendered against the city in the injury case for $17,500. The city recovered on the $10,000 bond, and brought action on the contractor's original bond for the balance of the judgment against it. Held, that the provision for retaining an amount due the contractor was solely for the benefit of the city, the sum to be retained, if any, resting in the discretion of the commissioner of public works, and the retention of the $25,000 did not create

---

it a security under the contract, so that the subsequent surrender thereof released the sureties on the contractor's bond.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 244–268; Dec. Dig. § 115.*]

2. PRINCIPAL AND SURETY (§ 115*) — RELEASE OF SURETY — TRUST FUND FOR SURETIES—SURRENDER.

The provision for retaining money due the contractor being for the benefit of the city, the fact that the city elected to retain $25,000, which was more than sufficient to pay the claim, did not make it a trustee thereof for the joint benefit of itself and the sureties, so that the release thereof discharged the sureties from liability for payment of the claim.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 115.*]

Houghton, J., dissenting.

Appeal from Special Term, New York County.

Action by the City of New York against William P. Baird and the sureties on his bond as a contractor. From a judgment of dismissal as to the sureties, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and McLAUGHLIN, JJ.

Terence Farley (Theodore Connoly, on the brief) and Francis K. Pendleton, Corp. Counsel, for appellant.

J. Woolsey Shepard (Woolsey A. Shepard, on the brief), for respondents.

CLARKE, J. This is an appeal from a judgment entered upon a dismissal of the complaint at the close of plaintiff's case as against James Baird and James Everard, sureties on a general bond to secure the due performance of a contract made by William P. Baird with the city for laying water mains in Fifth avenue. Clause P of that contract provided that the contractor should properly guard and light the excavation—

"and that he will indemnify and save harmless the parties of the first part [that is, the city] against and from all suits and actions of every name and description brought against them, and all costs and damages to which they may be put for or on account of any injury or alleged injury to the person or property of another, resulting from negligence or carelessness in the performance of the work, or in guarding the same, or from any improper materials used in its prosecution, or by or on account of any act or omission by the said party of the second part or his agents. And the said party of the second part hereby further agrees that the whole or so much of the moneys due to him under and by virtue of this agreement as shall or may be considered necessary by the commissioner of public works shall and may be retained by the said parties of the first part until all such suits or claims for damages as aforesaid shall have been settled and evidence to that effect furnished to the satisfaction of the said commissioner."

A fireman, Kelly, driving up Fifth avenue to a fire, went into the excavation dug by the contractor with his horses and engine and was severely injured. He filed a claim against the city with the comptroller 30 days before February 18, 1898, for $50,000, on which day he began a suit against the city and Baird for that amount. Prior to February, 1898, the city had retained $25,000 money due to Baird under his contract, which provided that he should be paid from time to time, upon

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

progress certificates, 90 per cent. of the amount earned. Baird gave a bond in the sum of $10,000 to secure the city against any judgment which might be obtained by Kelly, which bond has been the subject of litigation. City of New York v. Baird, 74 App. Div. 238, 77 N. Y. Supp. 446, reversed 176 N. Y. 269, 68 N. E. 364; Id., 117 App. Div. 659, 102 N. Y. Supp. 915, affirmed 191 N. Y. 501, 84 N. E. 1110. After the giving of this bond, the $25,000 which had been retained was paid to Baird. Subsequently Kelly obtained a judgment against the city for $22,553.36, which was subsequently compromised by the city by payment of $17,500. The city then sued on the $10,000 bond alluded to, and has finally obtained a judgment.

This suit is on the original bond, given upon execution of the contract to insure due performance thereof, to recover the amount paid in compromise of the Kelly judgment. The city having recovered on the $10,000 bond, of course, the amount here in issue is $7,500, the balance of the amount paid. A verdict was directed for that amount against the contractor under his contractual obligation to hold the city harmless. In the case at bar the liability to Kelly was established by original proof precisely as if Kelly was suing. The respondents claimed that as the city was entitled to retain from the contractor moneys due to him sufficient to meet a claim founded upon negligence, and as matter of fact when Kelly's claim was filed against the city had retained $25,000, and thereafter had paid that $25,000 to the contractor upon taking a bond of indemnity for a less sum, to wit, $10,000, by such conduct upon the city's part, they, as sureties, were released from the obligation upon their bond, because security in the possession of the obligee applicable to the payment of the debt guaranteed, which was within the contemplation of the parties and entered into the bond and upon which they had a right to rely, had been given up. The learned trial court took this view of the case and dismissed the complaint as to the sureties.

The question involved centers upon the proper construction of clause P of the contract, heretofore quoted. In clause Q there is another provision that if a mechanic's lien should be filed—

"then and in every such case the said parties of the first part shall retain, anything herein contained to the contrary thereof notwithstanding, from the moneys under their control and due or to grow due under this agreement, so much of such moneys as shall be sufficient to pay off, satisfy and discharge the amount" of such lien. "The moneys so retained shall be retained by the said parties of the first part until the lien thereon created by the said act and the filing of said notice shall be discharged pursuant to the provisions of the said act."

If this cause of action was based upon a violation of the duty of the contractor to pay his materialmen, and the city had been compelled to pay them, and had not retained money sufficient to meet the liens, and had then sought to recover over against these bondsmen, I agree that it could not recover; for the positive provision of clause Q that the city shall retain a sufficient amount to meet such liens until finally disposed of was a part of the contract, within the contemplation of the parties when the bond was given upon which the sureties were entitled to rely. But the provisions of paragraph P are quite different. This

is not an agreement made by the city. A previous clause of the contract had required the city to pay 90 per cent. of the amount due for work done as shown by the progress certificates. This clause P does not begin as does clause Q, "And it is further agreed by and between the parties," but it begins, "The said party of the second part," to wit, the contractor, agrees to properly guard and light and hold the city harmless, and then, "And the said party of the second part further agrees" that so much of the moneys due to him "as shall or may be considered necessary by the commissioner of public works shall and may be retained by the said parties of the first part until all such suits or claims for damages as aforesaid shall have been settled." That is a provision for the benefit of the city, and it puts the determination of the amount, or of any amount, to be retained within the discretion of the commissioner of public works, and, when the discretion of the commissioner has been exercised as to the amount, within the further discretion of the city whether it shall order the amount to be retained.

Said provision did not create such a security as comes within the cases relied on by the respondents. The strongest case is Antisdel v. Williamson, 165 N. Y. 372, 59 N. E. 207. What was there before the court was an extension of time for the payment of a mortgage for three years after the time due, without notice to or consent from the guarantors for the payment of the amount secured thereby. This was held to be a change which discharged the sureties.

In Mayor v. Brady, 70 Hun, 250, 24 N. E. 296, Judge Follett said:

"The fact that the city made payments to the contractors after Cruikshank was injured and presented his claim is no defense to this action, for the contract provides: 'The said party of the second part [contractors] hereby further agrees that the whole or so much of the moneys due to him [them] under and by virtue of this agreement as shall or may be considered necessary by the commissioner of public works shall or may be retained by the said parties of the first part [city] at their sole and exclusive option until all such claims or suits for damages aforesaid are settled, and evidence to that effect furnished to the satisfaction of the said commissioner.'"

The only difference between the language of the contract there construed and the one at bar is the addition, after "shall or may be retained by the parties of the second part," of these words, "at their sole and exclusive option." This adds nothing to the legal effect of the language used in paragraph P of the contract at bar, as I look at it. The words "shall or may be," upon which respondents lay such stress, are the same in both contracts.

In Mayor v. Brady, 151 N. Y. 611, 45 N. E. 1122, the court said:

"The only other question in the case that requires any notice arises upon the defendants' contention that they were discharged from the obligation by the act of the city in paying over to the contractors the balance of the contract price in its hands after the action by Cruikshank against it had been commenced, and when it knew that an outstanding claim for damages for injury existed. The stipulations of the contract on this point covered two distinct classes of cases: One where the claim was brought to the attention of the city by notice, in writing, to the commissioner, before the contract was completed, or within ten days thereafter. In such a case the obligation on the part of the city to retain the fund was absolute, unless the claim had been shown to be discharged. There was no notice under this provision given by the defendants, or any one, and hence it has no application to the facts in the case."

This is the case here. There were, as pointed out, absolute obligations; but they do not apply. The opinion proceeded:

"The claim upon which this action was based does not fall within that provision of the contract. The other provision of the contract left it optional with the city, in cases where notice was not served upon the commissioner, either to retain the fund or to pay it to the contractor, and it could do either without any breach of the contract. The stipulations of the contract in this respect were a part of the defendants' undertaking. They became bound as sureties for the faithful performance by the contractors of their contract, with full knowledge that the city could, at its option, in such a case pay the balance of the contract price to the contractors, and they cannot complain if the city exercised that option in the manner stipulated. The defendants, when they guaranteed performance, with knowledge of this provision, virtually consented that the city might do what it did, and hence they have not been prejudiced. The contract was not changed in any of its terms, nor was there any departure from it in its performance. The city did nothing that it had not the right to do by the contract, or that the defendants had not consented in advance that it might do. The claim proved by the plaintiff fell directly within the conditions of the bond, and the defendants were not in any manner released or discharged in the obligation of indemnity against it."

And so the judgment, which was upon a direction of a verdict in favor of the plaintiff, was affirmed; all concurring.

One of the grounds stated in the motion for the dismissal of the complaint was:

"Because the city having elected to retain from the amount due the contractor the sum of $25,000, which was more than sufficient to pay and discharge the claim filed against it, it became a trustee of that fund, not only for itself, but for the sureties as well, and the city, having released and surrendered the amount so retained, thereby released and discharged these sureties from liability."

This claim is disposed of by Mansfield v. Mayor, 15 App. Div. 316, 44 N. Y. Supp. 229, affirmed 165 N. Y. 208, 58 N. E. 889. It was there held that this provision was for the benefit of the city and indemnity against claims and that:

"It is certainly a novel proposition that, where a party takes an indemnity against claims which might be urged against it by reason of the acts of another, it becomes a trustee in respect to the indemnity fund, and that such fund is security for the claimant, and is not solely an indemnity to the party to whom it is given."

That case made the distinction between the clause in regard to liens and the clause in regard to retaining amounts by way of indemnity. In the Court of Appeals, Landon, J., said:

"The city is not the trustee of a fund in dispute."

The dismissal of the complaint was error. The judgment, so far as the sureties are concerned, should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ., concur.

HOUGHTON, J. (dissenting). I think the judgment dismissing the complaint was right, and should be affirmed. There is no dispute that the city had $25,000 in cash which belonged to Baird when the Kelly claim for damages was filed, and that it proposed to keep the

money to meet that claim. Nor is there any dispute that negotiations were had by Baird with the city for payment to him of the $25,000, which negotiations resulted in the city consenting to pay the sum over to him upon his giving a new bond in the sum of $10,000 to meet whatever damages Kelly might establish. I concede that the defendant sureties could not complain if the city had not retained in its hands any moneys due Baird on his contract, and that the city was under no legal obligation to do so for the purpose of reducing or guarding against the sureties' liability. But the city had retained the money and had it in its hands, and the Kelly claim had been presented and the liability of his recovering a judgment was under discussion, and the city was advised by its counsel to retain the money for the purpose of meeting any judgment which Kelly might obtain. Such condition of affairs is not only shown by the evidence and stipulations made on the trial of this action, but is fully illustrated in City of New York v. Baird, 74 App. Div. 241, 77 N. Y. Supp. 446, and 176 N. Y. 273, 68 N. E. 364, the records of which case appear to have been embraced in the stipulations. With all this situation confronting it, the city voluntarily entered into a new contract with the principal, Baird, whereby it agreed to pay him the $25,000 and take from him a new and independent bond, conditioned for the payment of any judgment which Kelly might obtain to the extent of $10,000. This was a new and independent contract between the obligee of the original bond given by these respondents and their principal, Baird, and it seems to me that the new bond and agreement took the place of the original bond so far as the Kelly claim was concerned, and released the sureties from any obligation to pay any sum because of that claim.

That the city did not exact a bond sufficient to pay the claim as ultimately established was its own fault. It was not a case of taking additional security from the principal, but was the taking of a substituted security. While the city was not obliged to retain any moneys, it did actually have in hand a sum more than sufficient to satisfy the Kelly claim. Having the money in hand and virtually setting it apart to meet the Kelly claim, the city voluntarily released it and paid it over to the principal. As early as the decision of Law v. East India Company, 4 Vesey, Jr. 829, the Master of the Rolls said:

"It cannot be contended, upon any principle that prevails with regard to principal and surety, that where the principal has left a sufficient fund in the hands of the obligee, and he thinks fit, instead of retaining it in his hands, to pay it back to the principal, the surety can ever be called upon."

The situation presented is not unlike that of a creditor secured by bond levying upon the property of his principal and voluntarily releasing the levy, which was held in Commonwealth v. Miller's Adm'rs, 8 Serg. & R. (Pa.) 452, to discharge the surety. I cannot see how the question as to whether the city was obliged to retain any money is decisive of the question at bar. The moneys had been retained and were being retained to meet the Kelly claim, and were voluntarily released and paid over to the principal, and a new obligation was taken.

It seems to me that such a transaction released these respondents from any further liability under their bond respecting the Kelly claim, and that the judgment of nonsuit was right, and should be affirmed.