[No. 14323.   Department One.   February 8, 1918.]

MARYLAND CASUALTY COMPANY, *Appellant*, v. T. H. HILL,
*Treasurer of the City of Aberdeen, et al.,*
*Respondents.*

INDEPENDENT SAND & GRAVEL COMPANY, *Respondent*, v.
MARYLAND CASUALTY COMPANY, *Appellant*,
A. R. EICHLER, *Respondent*.

L. G. HUMBARGER, *Respondent*, v. MARYLAND CASUALTY
COMPANY, *Appellant*, A. R. EICHLER, *Respondent*,
NELSON & SON *et al., Interveners and*
*Appellants*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—CONTRACTS—PAYMENT—
ASSIGNMENT—RIGHTS OF SURETY.  Where a contract for a municipal
improvement provided for full payment upon completion of the work
and did not authorize the city to retain any portion of the agreed
price for the protection of laborers and materialmen, the contractor's
assignment to a bank for advances made, filed with the city prior
to any notice that labor and materials had not been paid for, was a
valid appropriation of the fund due to the contractor, prior and su-
perior to any right of laborers or materialmen, secured by the con-
tractor's statutory bond; and the surety on the bond has no right to
have the funds applied to claims filed with the city clerk where the
city had no knowledge that the contractor in his application for the
bond had assigned the fund to the surety.

INJUNCTION—NECESSARY PARTIES DEFENDANT.  Injunction does not
lie against bankers, to whom city warrants had been delivered upon
a contractor's assignment of his claim, to prevent payment of the
warrants, where it appears that, prior to commencement of the ac-
tion, all the warrants had been sold to numerous purchasers who
were not made parties to the action.

APPEAL—REVIEW—HARMLESS ERROR.  Error cannot be predicated
upon the allowance of interest upon claims for labor and material
from a date 30 days subsequent to the completion of the work,
where the lien laws allow interest from the date of filing the lien
notice.

MUNICIPAL CORPORATIONS — ACTIONS ON CONTRACTOR'S BOND — AT-
TORNEY'S FEES.  In suits by claimants against the surety on a con-

[1]Reported in 170 Pac. 594.

tractor's bond securing a municipal contract, contested by the surety, attorney's fees are allowable against the surety.

SAME—ACTION ON CONTRACTOR'S BONDS—CONDITION PRECEDENT—NOTICE. Under the statute making the timely filing of notice against the contractor's bond a condition precedent to right of action thereon, the filing of a single notice for an unsegregated amount against two bonds securing different contracts is insufficient to fix the liability of the surety; and the defect cannot be cured or amended by proceedings upon the trial of the case.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered January 9, 1917, upon findings in favor of certain of the plaintiffs, in consolidated actions to recover upon a contractor's bonds, and for equitable relief, tried to the court. Affirmed.

*Grinstead & Laube* and *Stewart & Tucker,* for appellant Maryland Casualty Company.

*A. M. Abel,* for appellant Nelson & Son.

*W. H. Abel,* for appellant Grays Harbor Construction Company.

*A. Emerson Cross,* for respondents Hill *et al.*

*John C. Hogan,* for respondent Independent Sand & Gravel Company *et al.,* and Hayes & Hayes, Bankers.

WEBSTER, J.—On November 30, 1915, A. R. Eichler entered into a contract with the city of Aberdeen for certain repair work on the A. J. West bridge belonging to the city, the agreed price for the work being $4,548.91. The contract contained no provision for the retention by the city of any reserve percentage or balance to insure performance of the work by the contractor, and was silent as to the payment of claims for labor, material and supplies furnished the contractor, it merely providing for the payment to the contractor of the full contract price in current expense fund warrants upon completion and acceptance of the work, the provision in that regard being as follows:

"In consideration of the full performance of said work by said contractor, said city agrees to pay said contractor at the following rates as measured and estimated by the city engineer of the city of Aberdeen to wit (Schedule of prices). That payment shall be made to said party of the first party by said party of the second part in current expense fund warrants of said party of the second part drawing six per cent interest; such payment to be made after the full completion and acceptance of said work by the city council of the city of Aberdeen upon a final certificate of completion by the city engineer of the city of Aberdeen."

On February 9, 1916, A. R. Eichler entered into a second contract with the city of Aberdeen for further repairs to be made on the same bridge, the agreed price of this work being $13,771.87. As in the case of the former contract, the agreement contained no provision for withholding any reserve percentage or balance, and contained precisely the same provision with respect to the payment of the contract price upon completion of the work as above stated with reference to the first contract. Each contract provided that the contractor should furnish a bond conditioned for the faithful performance of the contract and for the protection of all laborers, mechanics, subcontractors and materialmen, and all persons furnishing the contractor, or any of his subcontractors, labor, provisions and supplies for carrying on the work. Pursuant to this agreement, separate bonds in the form prescribed by statute in such cases were furnished by the contractor, upon which the Maryland Casualty Company became surety.

Upon securing the first contract, Eichler applied to respondent Hayes & Hayes, Bankers, for financial assistance, and an arrangement was made whereby the bank advanced funds to the contractor as needed in the prosecution of the work, the understanding being that the money so loaned should be used exclusively

for that purpose. At this time it was also agreed that the payments to accrue under the contract were to be assigned to the bank for its security and protection. When the second contract was obtained, a similar arrangement for advances was made, at which time the contractor deposited with the bank his original duplicates of the contracts. Shortly thereafter the bank notified the city that it held assignments from Eichler of all payments to become due on both contracts, a formal written assignment of the warrants being filed by the bank with the city on May 10, 1916.

Under its agreement with Eichler, the bank, between December 7, 1915, and April 14, 1916, advanced to Eichler the sum of $16,288.44, the items aggregating this amount being credited from time to time to his account, upon which checks were issued and honored for labor and material used in the work. The city accepted the work under the first contract as completed on May 10, 1916, and on May 12, 1916, warrants to the amount of $4,548.91, in payment therefor, were issued and delivered by the city to Hayes & Hayes, Bankers, by virtue of its assignment. On May 17, 1916, the city accepted as completed the work under the second contract, and on May 18, 1916, it issued and delivered to Hayes & Hayes, Bankers, warrants in the sum of $13,771.87 in payment therefor. All of these warrants were sold and assigned by the bank to various purchasers thereof prior to May 20, 1916, the proceeds being applied to the satisfaction of the contractor's notes for advances, the payment of certain labor and material claims theretofore discounted by the bank, and the balance deposited to Eichler's credit.

On July 10, 1916, the Independent Sand & Gravel Company, a corporation, and L. G. Humbarger began separate actions against the contractor and Maryland Casualty Company to obtain judgment for various

claims for labor and materials furnished in the per-
formance of the contracts. On July 13, 1916, Maryland
Casualty Company began its action against T. H. Hill,
as treasurer of the city of Aberdeen, city of Aberdeen,
a municipal corporation, and Hayes & Hayes, Bankers,
alleging in substance the execution of the contracts
hereinbefore referred to, the giving of the bonds pro-
vided for therein and its suretyship thereon; that the
contractor, in his written application for the execution
of such bonds, agreed with the plaintiff that, "In event
of claim or default under the bond herein applied for,
all payment specified in the above mentioned contract
to be withheld by the obligee until the completion of the
work, shall, as soon as the work is completed, be paid
to the company, and this covenant shall operate as an
assignment thereof, and the residue, if any, after re-
imbursing the company as aforesaid, shall be paid to
the undersigned, after all liability of the company has
ceased to exist under the said bond, and the company
shall, at its option, be subrogated to all the rights,
properties and interest of the undersigned in said con-
tract or contracts;" that, in consideration of such ap-
plication, the plaintiff became surety upon the bonds
of the contractor, as in the contracts provided; that the
contracts were completed and accepted by the city, and
warrants in payment therefor were delivered to Hayes
& Hayes, Bankers, under a purported assignment, and
that the bank, at the time of receiving and filing the
assignment, had knowledge of plaintiff's rights in the
premises as surety upon the contractor's bonds; that,
prior to the delivery of the warrants by the city, claims
had been filed on behalf of laborers, mechanics and ma-
terialmen for work, material and supplies furnished
the contractor, and that, subsequent to the delivery of
the warrants, numerous similar claims had been filed
with the city, all of which the contractor had failed to

pay; that none of the warrants so delivered to the bank had been paid, and the plaintiff, as surety on the contractor's bonds, is entitled to the funds due from the city in payment for the work under the contracts, and because of the default of the contractor in failing to pay labor and material claims, it is subrogated to all the rights of the contractor, the city of Aberdeen, and all persons who had filed claims against the bonds; that, when funds become available for the purpose of retiring the warrants, the treasurer of the city of Aberdeen will pay to Hayes & Hayes, Bankers, or its. assigns, the amount due under the warrants, unless restrained from so doing, and that Hayes & Hayes, Bankers, unless restrained, will sell, assign or transfer the whole or some portion of the warrants to third parties, who may thereby claim to be innocent holders thereof, which claim, if sustained, will' result in the total or partial dissipation of the fund, to which the plaintiff, as surety, is entitled for reimbursement. The relief prayed for is that Hill, as treasurer, and the city of Aberdeen be enjoined from disbursing any funds in the possession of either of them in payment of the warrants theretofore issued, that Hayes & Hayes, Bankers, be enjoined from selling or transferring the warrants, and that it be adjudged that plaintiff is entitled to the moneys due from the city in payment of the warrants, and to the possession of the warrants theretofore delivered to the bank.

The written application for the bond, which contained the assignment relied upon by the casualty company, was no part of the bond, nor was it filed therewith; neither had the city or the bank any notice or knowledge of its existence until the commencement of the action on July 13, 1916.

On motion of Maryland Casualty Company, the three separate actions were consolidated for the purposes of

trial, and all parties who had filed notice of claim against the bonds with the city were brought into the consolidated action. Upon the issues joined by the pleadings, the cause came on for trial, resulting in a judgment dismissing the action of the Maryland Casualty Company, and fixing the amounts due the several lien claimants, except that the claims of N. Nelson & Son and Grays Harbor Construction Company were disallowed. The Maryland Casualty Company, N. Nelson & Son, and Grays Harbor Construction Company have appealed. We will first consider the appeal of the Maryland Casualty Company from the judgment dismissing its action as to the city treasurer and the city of Aberdeen.

The contracts for the improvement were unusual and out of the ordinary, in this, that no provision was made for withholding any portion of the contract price to insure the payment of claims for labor or materials filed with the city; neither was there any covenant in the agreements on the part of the contractor to pay such claims, his obligation in this respect being merely to furnish a bond for that purpose. Moreover, no advances were to be made as the work progressed, the full amount becoming payable upon the completion and acceptance of the work. It is undisputed that the work was performed by the contractor in the manner provided by the contracts; therefore, upon the acceptance thereof, the city became unconditionally bound to deliver the warrants in payment therefor. There was no legal excuse for doing otherwise. Having no knowledge of the assignment to the casualty company, it was justified in delivering the warrants to the bank as directed by the contractor.

The casualty company, however, insists that the city was not warranted in making payment to the bank for the reason that certain claims for labor and material

furnished upon the work had been filed with the city clerk, which placed the contractor in default. When the first warrants were delivered, no claims had been filed for labor and material furnished under the November contract, hence there is no merit whatever in the argument with reference to the delivery of these warrants. Neither is the position well taken with reference to the delivery of the second contract warrants on May 18, 1916. At that time, three claims had been filed, one for $10, another for $20 and a third for $85, which, upon the trial, was found valid in the sum of $18. The contract contained no clause requiring the adjustment of these claims as a condition precedent to the contractor's right to payment when the work was completed and accepted. No provision had been made for the retention by the city of any part of the contract price pending the settlement of claims for labor and material furnished to the contractor. In no sense of the term was the contractor in default of his obligation to the city, which had fulfilled the measure of its duty by taking the bond required by the statute.

In *Dowling v. Seattle,* 22 Wash. 592, 61 Pac. 709, the contract contained the following provision:

"The said contractor agrees to pay the wages of all persons and for assistance of every kind employed upon or about said work, and for all materials purchased therefor; and the city of Seattle may withhold any and all payments under this contract until satisfied that such wages, assistance, and materials have been fully paid for."

It further provided that, on the 20th of each month, bonds were to be issued for seventy per cent of the contract price for work done during the preceding calendar month, as shown by the estimates returned by the city engineer, the remaining thirty per cent thereof to be retained by the city to secure the payment

of laborers and materialmen for work performed or materials furnished under the contract. The contractor, with the acquiescence of the city, gave certain assignments of bonds to be delivered in payment of the work. Thereafter he abandoned the contract and the work was completed by his sureties, who subsequently brought an action to have the bonds turned over to them to the exclusion of the assignees of the contractor. In sustaining the assignments we said:

"These assignments, being valid when made and assented to by the city, were not invalidated by the subsequent default of Forest. It is true that the city, by virtue of a provision of the agreement which we have hereinbefore noted, *might* have withheld all payments from the contractor until it was satisfied that all just claims for labor and materials had been fully paid; but it does not follow from that fact, as contended by the learned counsel for appellants, that it was obliged to do so, and that, having done otherwise, it should now be held to be a trustee of the laborers and material men, and, as such, liable to them directly for the amount of the fund assigned and of the bond delivered to the contractor. If these appellants had had a lien upon this fund, as they had upon the thirty per cent of the amount of the monthly estimates which was withheld by the city, there would be at least some ground for the claim that the city is their trustee. But, in the absence of such lien, this contention cannot be sustained."

In *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, a case very similar in its facts to this case, the rule announced in the *Dowling* case was reaffirmed. In the course of the opinion, after referring to the case of *Maryland Casualty Co. v. Washington Nat. Bank*, 92 Wash. 497, 159 Pac. 689, Judge Ellis said:

"This is a distinct holding that it is only where there is a clear and express reservation in the contract of a fund to be held up for the benefit of laborers and ma-

terialmen that there is any fund the contractor may not effectually assign by an assignment made prior to his default and notice of such default to the board or, as in this case, to the city, and that it is only as to such reserve fund that the labor and material claims have any priority over such assignments, hence only as to such reserve fund that there is any right of subrogation in favor of the bondsmen. It is true that in the *Maryland Casualty Co.* case we cited *Prairie State Nat. Bank v. United States,* 164 U. S. 227, and *Henningsen v. United States Fidelity & Guar. Co.,* 208 U. S. 404, in which cases it was held that, under the United States statutes and decisions, the whole contract price for public works is a trust fund for the payment of labor and material claims to which the bondsmen are subrogated as of the date of their bond, but it is manifest from what we have quoted above that we cited these cases only on the question of the surety's right of subrogation to the twenty per cent reserved, not as adopting the view that the whole of the contract price was a reserve fund under the contract which we were then considering.

"In the case before us, the bank had taken assignments of all moneys to become due to the contractors as security for the notes, on which there remains a balance due of $2,300. These assignments were taken and filed with the city comptroller prior to any notice to any one that the labor and material claims had not been paid or would not be paid. The contract itself contained no provision for an absolute reserve of any percentage as security for labor and material claims. It contained nothing but a provision permitting the city to withhold payment until satisfied that all labor and material claims had been paid. Nothing, however, had been held up by the city at the time the assignments were made. It follows that, under the rule in the *Dowling* case, the contractors' assignments to the bank must be treated as a valid appropriation of the fund which was afterwards paid into court to the payment of the bank's notes, including this balance of $2,300, prior and superior to any right of laborers or materialmen, hence superior to any right of subrogation

in the surety.   As said in the *Dowling* case, 'These assignments being valid when made and assented to by the city, were not invalidated by the subsequent default' of the contractor.   Any other view would make it impossible for the ordinary contractor to finance a large contract by obtaining credit with a bank on the strength of its performance.

"We find no merit in the claim that the bonding company has a superior equity in this fund over that of the bank.   It has no equity in the fund as against the bank, which paid its money on the strength of assignments of the fund at a time when the contractors had full right to collect and dispose of the fund as they saw fit."

It must be borne in mind that, under the terms of the contracts between Eichler and the city of Aberdeen, the city was not authorized to retain any portion of the agreed price, but was obligated to pay the full amount upon the completion and acceptance of the work, hence, there was no reserve balance which the contractor might not lawfully assign, or which constituted a trust fund for the benefit of the surety.   The failure of the contractor to perform his contract according to its terms was the only ground upon which the city could refuse to issue and deliver the warrants.   Upon the completion and acceptance of the work, its duty to pay became absolute.   The judgment of the court, in dismissing the action as to the city treasurer and the city of Aberdeen, was clearly right.

This brings us to the question of whether the action was properly dismissed as to defendant Hayes & Hayes, Bankers.   The plaintiff's case as against this defendant was predicated upon the assumption that the warrants in question were in possession of the bank when the suit was commenced, and the relief sought was that the city be enjoined from paying the warrants and that the possession thereof be delivered to the plaintiff, no personal judgment being prayed for against the bank.

Upon the trial of the cause, it was conclusively established that all of the warrants had been sold and transferred by the bank; prior to May 20, 1916, to numerous purchasers thereof, who were not made parties to the action and who were not before the court. Obviously, no judgment could have been rendered in anywise affecting the rights of the warrant holders. The court had no jurisdiction to enjoin the payment of the warrants or to adjudge their delivery to the plaintiff. The bank never received any money or funds from the city of Aberdeen. What it received from the city was warrants to be paid out of a fund upon which they were drawn. The only money the bank received from the transaction was the proceeds derived from the sale of the warrants. There was no more reason for making Hayes & Hayes, Bankers, a party defendant to the action than there was to make every one through whose hands the warrants had passed parties thereto, the only necessary parties defendant being the city of Aberdeen and the warrant holders. What judgment could be rendered against the bank? The court could not find that it had a fund in its possession upon which the surety had a lien, because that would not be true. A judgment ordering the city to pay the warrants to the casualty company, without the holders of the warrants being parties to the action, would be void. The only proper judgment was the one the court entered dismissing the action of the Maryland Casualty Company. *State ex rel. Reed v. Gormley,* 40 Wash. 601, 82 Pac. 929, 3 L. R. A. (N. S.) 256; *Savage v. Sternberg,* 19 Wash. 679, 54 Pac. 611, 67 Am. St. 751; *Stallcup v. Tacoma,* 13 Wash. 141, 42 Pac. 541, 52 Am. St. 25.

In the *Gormley* case, Judge Dunbar said:

"It is a rule of law, as old as the law itself, that a court cannot adjudicate the rights of parties who are not actually or constructively before it, with an op-

portunity to defend or maintain their rights in the action. In this case the holders and owners of the warrants, not having been made parties to the action, the court has neither jurisdiction of the persons or the thing. If it had either, there might be some basis upon which it could proceed. But it is inconceivable what effect a judgment would have which was rendered without jurisdiction of either the parties or the thing which is the subject of the controversy. If it is an action *in personam,* confessedly upon the alleged amended complaint the court has not obtained jurisdiction of all the parties in interest. If it could be construed to be an action *in rem,* it is equally manifest that there is no jurisdiction of the *res.* The parties would not be bound by the judgment, and it would be purely a moot question which would be determined by the court."

Some contention is made by the casualty company that the amounts allowed various claimants were excessive, in that they contain items for the use of appliances where user was not proved, interest not prayed for, and erroneously computed, and attorney's fees on claims not chargeable to the surety. With respect to the rental charges for the use of scows, dredges, derricks, donkey engines, etc., we think the record sustains the conclusion of the trial court that these appliances were actually used in the work during the time for which allowance was made. It would unduly extend this opinion to enter upon a detailed discussion of the evidence relating to each item. The record discloses that interest was awarded the claimants on their several demands from a date thirty days subsequent to the completion and acceptance of the work. This was more favorable to appellant than the law warrants. We have held that interest is allowable upon claims filed under lien laws from the date of filing the lien notice. *Siler Mill Co. v. Nelson Co.,* 94 Wash. 477, 162 Pac. 590; *Brace & Hergert Mill Co. v. Burbank,* 87 Wash. 356, 151 Pac. 803; *Cornelius v. Wash-*

*ington Steam Laundry,* 52 Wash. 272, 100 Pac. 727; *Huetter v. Redhead,* 31 Wash. 320, 71 Pac. 1016. There is no merit in the contention that the complaint did not embrace this item, as the pleading was amended upon the trial. However, the amendment was not necessary. *Spokane v. Costello,* 42 Wash. 182, 84 Pac. 652.

Regarding the allowance of attorney's fees on the claims to which objection is made, the record shows that, by amendment, these causes of action were included in the action brought by plaintiff Humbarger as assignee, and that they were contested by the casualty company. We perceive no reason why the attorney's fees should not be allowed. The case of *Maryland Casualty Co. v. Washington Nat. Bank,* 92 Wash. 497, 159 Pac. 689, relied upon by the appellant, is not in point. In that case, the action was commenced by the bonding company, and the claimants were impleaded for the purpose of having their demands paid. The validity and justness of the claims were admitted by the surety. In this case, the suit was by the claimants against the surety, which contested the claims throughout the litigation.

Finally, we come to a consideration of the appeals of N. Nelson & Son and Grays Harbor Construction Company. Each of these claimants filed a single notice against both bonds for an unsegregated amount. Upon the trial, N. Nelson & Son filed a disclaimer as to recovery against the bond given under the first contract, while Grays Harbor Construction Company filed its claim too late to fix liability against the first bond, but seeks to recover for items furnished upon the second contract. Judgment was rendered in favor of the claimants against the contractor, and the action was dismissed as to the surety.

In *Carstens Packing Co. v. Empire State Surety Co.,* 84 Wash. 545, 147 Pac. 36, we held a notice similar to

the ones here involved was not a compliance with the statute, and was not sufficient to constitute the basis of a right of action against the surety. Counsel seeks to avoid the effect of that decision by insisting that the question in the *Carstens* case arose upon demurrer to the complaint, while here, in view of what occurred at the trial, the defect in the notices was cured. Under the statute, the timely filing of a sufficient notice is a condition precedent to any right of action upon the contractor's bond. *Herren v. Kansas City Casualty Co.*, 94 Wash. 77, 162 Pac. 17; *Rodgers v. Fidelity & Deposit Co.*, 89 Wash. 316, 154 Pac. 444; *Robinson Mfg. Co. v. Bradley*, 71 Wash. 611, 129 Pac. 382; *Crane Co. v. Aetna Indemnity Co.*, 43 Wash. 516, 86 Pac. 849; *Huggins v. Sutherland*, 39 Wash. 552, 82 Pac. 112. The notice must substantially conform to the requirements of the statute. The provision is for the benefit of the sureties on the bond. To hold that a notice essentially defective may be amended or cured by proceedings occurring upon the trial is to nullify the statute and defeat the very purpose for which it was enacted.

The judgment is in all respects affirmed.

ELLIS, C. J., PARKER, MAIN, and FULLERTON, JJ., concur.