[No. 15686.   Department Two.   June 23, 1920.]

Lewis County, *Respondent,* v. Aetna Accident &
Liability Company, *Appellant.*[1]

Counties (46)—Contractor's Bonds—Actions—Claims — Payment to Contractor—Liability of Surety. Where a contract for road work required the contractor to buy cement from the county, and to pay for the same monthly in cash or by deductions from the monthly estimates, and the county neglected to take pay for the cement and paid the contractor in full, it breached the contract and cannot recover for the cement from the surety on the contractor's bond.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered October 6, 1919, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*H. E. Donohoe* and *C. H. Winders,* for appellant.
*Herman Allen* and *J. H. Jahnke,* for respondent.

Bridges, J.—This is a suit on a road contractor's bond to recover the value of certain cement furnished by Lewis county to the contractor.

In April, 1916, the respondent, Lewis county, entered into a contract with T. H. Cochran & Sons whereby the latter agreed to build a certain county road for $15,950. All cement to be used by the contractor was to be purchased from the county at $1.56 per barrel. With reference to payment therefor, the contract provided that, "payments for the cement to the county shall be made not later than the 10th day of the month following the month in which any cement was ordered. Payment for the cement may be made by check to Lewis county, or by the county withholding an amount equal to the price of the cement from the monthly esti-

[1] Reported in 191 Pac. 146.

mates." The contract further provided for monthly payments not to exceed seventy-five per cent of the amount due the contractor for the previous month. It was further provided that,

"Final payment for said work shall be made within thirty (30) days after the entire work has been completed and accepted . . . provided, that before the making of such final payment, the contractor shall show to the satisfaction of the board [of county commissioners] that all just dues, debts of laborers, mechanics, materialmen and persons who have supplied such contractor or subcontractor with material or goods of any kind for such work, have been paid."

The contractor gave a bond for the faithful performance of the contract, with the appellant, Aetna Accident & Liability Company, as surety. This bond was conditioned upon the contractor complying with the contract in all of its terms and paying "all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such person or persons or subcontractors with materials, supplies and provisions for carrying on such work, all just dues, debts and demands incurred in the performance of such work."

In the performance of this contract, the county sold to the contractor $4,073.88 worth of cement. The road was completed and accepted and all the contract price paid to the contractor by the county, but the latter has not received payment for its cement. The county had a judgment in the lower court against the surety. All the other parties to the action were either not served with process or were, by the trial court, dismissed out of the suit.

From month to month, as the work progressed, the contractor was paid seventy-five per cent of the amount he had earned during the previous month. The road

was completed and duly accepted on November 9, 1916, and at that time the balance found due to the contractor was $7,949.64. A warrant for this amount was drawn in favor of the contractor. Previously, he had assigned this warrant to the defendant Peninsular National Bank, of St. Johns, Oregon, who subsequently received the same from the county auditor and cashed it with the county treasurer. At all times the county and its officers knew that it had not received any pay for the cement it had furnished. In fact, the testimony shows that the county commissioners and the county auditor intended to refuse to deliver the warrant until the county had been paid, but through some apparent mis-take the warrant was delivered without such payment being made, and without the amount owing for the cement being deducted from the warrant. Appellant did not know, before the bringing of this suit, that the bill had not been paid.

This suit was brought more than two years after the delivery and payment of this warrant. The only question before us is whether, under these facts, the county is entitled to recover of the appellant. We are satisfied that the learned trial court erred in giving judgment against the appellant. It is fundamental that the county can have no right to recover on the bond if it has itself breached the contract in any material respect. This we think it did. The contractor was obliged to purchase his cement from the county, and the contract required that,

"Payments for the cement to the county shall be made not later than the 10th day of the month following the month in which any cement was ordered. Payment for the cement may be made by check to Lewis county, or by the county withholding an amount equal to the price of cement from the monthly estimates of the engineer in charge."

A fair construction of this provision of the contract required the county to get its pay monthly, either by receiving the check of the contractor or by deducting the amount from sums earned by the contractor. The county could not look to the contractor or to the surety at its option. The contract provided a way by which it could protect itself, and it was bound so to do. Indeed, the duty of the county was made the plainer by the actions of the parties themselves. After the work was completed, the county auditor wrote the contractor asking him to remit for the cement, and he answered, saying, "we wish you would retain from the amount due us for this improvement, the $4,073.88 for cement."

The authorities are numerous in support of the proposition that, where the contract requires the county, or other builder, to apply money in its hands belonging to the contractor to the payment of claims or demands against the latter incurred in the performance of the work, it may not pay out to the contractor the balance earned by him and look to the surety for the payment of claims which at all times it knew existed.

In the case of *Greenville v. Ormand,* 51 S. C. 121, 28 S. E. 147, the court said:

"The payment by the city of Greenville to the contractor of the whole amount due under the engineer's estimate, including the ten per cent reserve, without deducting the amount due the city for tools and dynamite, which, under the contract the city had the right to do, was the giving up of a security for the debt sued on upon which the surety had the right to rely."

In *Kiessig v. Allspaugh,* 91 Cal. 231, 27 Pac. 662, 13 L. R. A. 418, the contract for the construction of a building provided that the owner should retain one-fourth of the contract price until final settlement. After the building was completed and accepted, and

after he knew there were outstanding claims for labor, the owner paid the contractor the balance of the contract price. He then paid the laborers' claims and sought to hold the surety company therefor. The court said:

"The appellant, Lundeen, was a surety, and as money sufficient to satisfy all of the liens mentioned in the complaint was, or ought to have been, in the hands of the plaintiff at the time of his settlement with the contractors, he should have so applied it, instead of paying it to the contractors. This balance was to be retained in his hands as an additional security against liens upon the building, and in equity, he held the same also for the benefit of the sureties."

In the case of *Taylor v. Jeter*, 23 Mo. 244, the court said:

"The contract duty of this builder was to furnish the materials and do the labor, and he failed in both respects when he allowed the building to be encumbered with these liens. The owner having notice of them, and paying what by the substantial terms of the contract he was entitled to retain until they were removed, voluntarily abandoned an ample fund, which, according to the conditions of the contract, was to accumulate in his own hands as the primary security for its due performance, and in which the surety had an equal interest with himself. He must, therefore, bear the loss occasioned by his own negligence or folly."

To the same effect are *Electric Appliance Co. v. United States Fid. & Guaranty Co.*, 110 Wis. 434, 85 N. W. 648, 53 L. R. A. 609; *City of New York v. Baird*, 132 App. Div. 770, 117 N. Y. Supp. 561.

In the case at bar, the contract not only required the respondent to retain the reserved twenty-five per cent and the last payment until the contractor had paid all claims, but it further obligated the county to see that its cement bill was paid from month to month by de-

ducting, if necessary, proper sums from the monthly or final payments.

Counsel for respondent cite the cases of *Spokane v. Costello*, 42 Wash. 182, 84 Pac. 652, and *Maryland Casualty Co. v. Hill*, 100 Wash. 289, 170 Pac. 594, as opposed to the doctrine which we are here advocating. We think those cases uphold, rather than oppose, our holding here. In the first case, Costello had a contract for the building of certain streets in the city of Spokane. The contract obligated him to protect the city from damage resulting from his negligence. Before the work was completed and accepted, one Born was injured through the alleged negligence of the contractor and notified the city of his claim. After that, the city accepted the work and paid the contractor the amount due. Later, Born obtained a large judgment against the city and it sought to hold the contractor's bond therefor. The surety defended on the ground that the city should have retained in its hands sufficient to protect it against this liability. Judge Fullerton, writing the opinion, said:

"The cases cited as maintaining the contrary doctrine are distinguishable from this case in the fact that the contracts there under consideration expressly made it the duty of the owner to withhold of the contract price a specific sum until final settlement between the parties, and the release of the surety was based on the fact that payment of the entire contract price had been made after the owner had notice that claims were made against his property for which the contractor was primarily liable. In other words, the payment was made in violation of the express terms of the contract. But here the facts are different. It will be noticed from the quotation made from the contract that the city was not required to withhold any fixed sum, but it is provided that 'if in the judgment of the board of public works it shall be necessary to retain a por-

tion' of the contract price the city may retain such amount as the board may deem necessary."

The opinion then proceeds to show that the contract did not require the city to withhold any sum, but merely authorized it to do so if it saw fit.

In the *Hill* case, *supra,* discussing a similar question, the court said:

"The contract contained no clause requiring the adjustment of these claims as a condition precedent to the contractor's right to payment when the work was completed and accepted. No provision had been made for the retention by the city of any part of the contract price pending the settlement of claims for labor and material furnished to the contractor. In no sense of the term was the contractor in default of his obligation to the city, which had fulfilled the measure of its duty by taking the bond required by the statute."

Where a building contract provides that the owner shall retain in his hands certain moneys earned by the contractor for protection against labor and materialmen's claims, fairness, reason and the authorities require us to hold that the owner, having knowledge of such claims, may not pay to the contractor all the sums earned by him and then look to the surety for reimbursement.

The judgment is reversed, and the cause remanded for dismissal.

HOLCOMB, C. J., FULLERTON, MOUNT, and TOLMAN, JJ., concur.