[No. 2969. Decided June 28, 1900.]

JOHN DOWLING et al., Appellants, v. CITY OF SEATTLE et al., Respondents.

MUNICIPAL CORPORATIONS—CONTRACT FOR PUBLIC IMPROVEMENTS— EQUITABLE ASSIGNMENTS AGAINST INSTALLMENTS DUE.

Under a public improvement contract between a city and a contractor, which provides that the contractor is to complete the work for a stipulated sum and pay all claims for labor and material; that he should be allowed monthly 70 per cent. of the amount earned by him, upon estimates made by the city engineer; and that 30 per cent. of the contract price of the estimated amount of work done should be retained by the city to secure laborers and material men; no lien is created against such 70 per cent. fund in favor of labor and material claims, but such fund is subject to disposal by the contractor; and orders drawn by him against such fund constitute an equitable assignment of so much thereof as is necessary for their payment, if assented to by the city, and these assignments being valid when made would not be invalidated by the subsequent default of the contractor.

SAME—ABSCONDING CONTRACTOR—SUBROGATION OF BONDSMEN.

Where the contractor absconds and the improvement is completed by his bondsmen, there are no rights held by the city, under such a contract, in or to the fund earned and assigned by the contractor to which his bondsmen can become subrogated.

Appeal from Superior Court, King County. — Hon. WILLIAM HICKMAN MOORE, Judge.   Affirmed.

*William Martin,* for appellants:

This contract was an entire contract, and Forest, abandoning the contract before it was completed, has no rights or claim against the city for any fund whatsoever, and, he having none, his assignees would have none. *Superintendent of Public Schools v. Bennett,* 72 Am. Dec. 373; *Hayward v. Leonard,* 19 Am. Dec. 268, notes; *Dula v. Cowles,* 75 Am. Dec. 463; *Chase v. Hogan,* 38 Abb. Pr. (N. S.) 65; *Catlin v. Tobias,* 84 Am. Dec. 183.   Even where the owner has accepted an order from the builder to pay a third party moneys becoming due on the building contract and the contractor defaults, the party having the accepted order is left without a remedy against the owner. *Fisken v. Milwaukee Bridge & Iron Works,* 49 N. W. 133; *Duffield v. Johnston,* 96 N. Y. 369.

The bondsmen in this action, upon the completion of said improvement, in thus protecting the city became subrogated to any and all rights, and to enforce the same, which the city had or could enforce against their principal. By this contract the city had the right, and in fact it was its duty, to withhold all moneys and assessments as the work progressed, unless the laborers were paid; and the bondsmen have a right to demand that the money in this case be paid to the laborers and material men. *Aetna Life Ins. Co. v. Town of Middleport,* 124 U. S. 534 (31 L. ed. 537); *Greenville Savings Bank v. Lawrence,* 76 Fed. 545; *Spicer v. Snyder,* 12 N. Y. Supp. 745; *Merchants' & Traders' Bank v. Mayor,* 97 N. Y. 362; *Knapp v. Swaney,* 56 Mich. 345 (56 Am. Rep. 397).

*J. R. & R. M. Kinnear,* for respondent Crouley.

The opinion of the court was delivered by

ANDERS, J.—On February 17, 1896, one James Forest entered into a contract with the city of Seattle to improve, to the established grade, Harvard Avenue North, from the north end of the existing improved section to the north margin of East Highland Drive, upon certain terms set forth in the contract. Afterwards, and on September 3, 1896, a supplementary and amendatory agreement to said contract for said improvement was made between the city and James Forest, in accordance with ordinance No. 4279 of said city, providing for the payment for said improvement in local improvement bonds and warrants at the same rate specified in the original contract. It was provided in said supplementary agreement that said bonds and warrants were to be issued as said work progressed, upon an estimate being made thereof by the city engineer as follows: On or about the 20th day of each month during the progress of said work, bonds and warrants were to be issued for seventy per cent. of the contract price of the estimated amount of said work returned by the city engineer as having been done during the preceding calendar month, and the balance of said contract price, being thirty per cent. thereof, to be retained to secure the payment of laborers who shall have performed work thereon, and material men who may have furnished materials therefor. The said contract further provided that, "the said contractor agrees to pay the wages of all persons and for assistance of every kind employed upon or about said work, and for all materials purchased therefor; and the said city of Seattle may withhold any and all payments under this contract until satisfied that such wages, assistance, and materials have been fully paid for." On the said 3d day of September, 1896, the said James Forest executed a bond to the city of Seattle with John Dowling, Rosa A. Dowling,

George Haisch, and Charles H. Tracy as sureties, in the penal sum of $7,000, conditioned for the faithful performance of said improvement, and for the payment for labor done and materials furnished upon and for said improvement, in accordance with the terms of said contract and supplementary agreement. Immediately after executing the supplementary agreement and the bond above mentioned, Forest began work under his contract, and continued the same, by himself and employees, until October 24, 1896, upon which date he abandoned the work and absconded from the city, leaving his employees and those who had furnished materials for the improvement unpaid. At the time he quit work, Forest had earned, according to the finding of the trial court, the sum of $1,895.70. On October 20, 1896, said Forest demanded of the city a bond in the sum of $500, in part payment for the work then done under said contract, and said bond was accordingly executed and delivered to him on said day. After deducting the amount of the bond and $568.70, being thirty per cent. of the amount earned by Forest, to secure the payment of the laborers and material men who furnished labor and material on said improvement, from the entire amount earned, there still remained the sum of $827, held by the city. On October 20, 1896, one T. L. Crouley loaned to the contractor Forest the sum of $384, on the latter's statement that he needed money to pay for work and materials furnished for said improvement, and took Forest's note therefor for $400, including one month's interest on the amount received by Forest, together with a commission for procuring $200 of the amount loaned from a third party, payable on November 20, 1896. At the same time, and as part of the same transaction, Forest, to secure said loan, gave the said Crouley an order on the comptroller of the city of Seattle for the first local improvement bond due

in November, 1896, on account of his contract for grading Harvard avenue, the said bond to be in the sum of $500. And on the same day, and before the money so borrowed was paid to said Forest, said Crouley and Forest went to the comptroller's office and presented the said order or request, and the said comptroller indorsed thereon the words "Bond No. 2," and filed the same in his office. On October 22, 1896, the said Forest represented to one Fred S. Twitchell that he required money for the purpose of paying for labor and materials, and pursuant to said representation, and in accordance with the request of said Forest, the said Twitchell then loaned to said Forest the sum of $500; and in consideration of said loan the said Forest assigned to said Twitchell $515 of the money then due or to become due to him on October estimates for labor on Harvard avenue, as per contract, and, at the same time, gave said Twitchell an order for said sum on the comptroller of the city, which order was on said day duly presented by said Twitchell to said comptroller and by him duly filed in his office. On September 5, 1896, the said Forest gave to the Holloway Harness Company two orders on the city comptroller, aggregating $30, and payable out of the amount due upon his contract with the city, which orders were received by the comptroller and duly filed in his office. The bond No. 1, for $500, issued and delivered to said Forest, was by him hypothecated to one F. M. Spinning, as security for the payment of a loan by said Spinning to said Forest of the sum of $368, with interest thereon from October 20, 1896, at the rate of one per cent. per month. And the trial court found that said Spinning offers to deposit said bond, with the other assets or proceeds, and to be disposed of as said proceeds, after deducting the amount due him. On September 4, 1896, the said James Forest assigned to F. M. Spinning $56.50 of the

money due him on Harvard avenue contract, and signed and delivered to said Spinning an order for the same on the comptroller of the city of Seattle, which order was, on the same day, filed with the said comptroller. After Forest abandoned the work, his bondsmen were notified by the board of public works of the city that, if they did not complete it, the city would finish it at their expense. Thereupon, the bondsmen began work on October 27, 1896, in accordance with the terms and conditions of said contract with Forest, under the direction and supervision of the city engineer, and continued the same in accordance with said contract until completed and accepted by the city, on February 27, 1897. The city engineer estimated the value of the whole work at $4,258.51. After the completion of the work, bonds and warrants were issued in the name of Forest to the amount of $3,459.10, in payment for the work in accordance with the requirements of the contract. A question having arisen between the city and the bondsmen of Forest as to the proper disposition of this fund, this action was instituted by the bondsmen and a large number of laborers to obtain an order or decree that the whole of the bonds and warrants be turned over and paid to the laborers and material men, to the exclusion of the assignees of Forest.

The trial court, after considering the evidence in the case and making and filing its findings of fact and conclusions of law, entered a judgment and decree, ordering George M. Holloway, clerk of the court, to sell the bonds and collect the warrants deposited in court by the defendant city in the sum of $3,378.55, and to turn the bond in the sum of $20.59, for extra work performed by Dowling, over to plaintiff John Dowling, or his assigns, and to pay from the funds derived from the sale of said bonds and the collection of said warrants, amounting to $3,378.55,

upon the following claims and in the following order: That the proceeds derived from the $500 bond held by F. M. Spinning (after the payment to said Spinning of the amount secured by said bond, with interest, and the sum of $56.50 upon an order of James Forest) be added to the fund derived from the sale of bonds in the sum of $827 (being a part of the seventy per cent. earned by Forest up to the time he abandoned his contract), and applied in payment of (1) the claim of the defendant Holloway Harness Company; (2) the claim of the defendant T. L. Crouley, and (3) the claim of Fred S. Twitchell, upon his order from James Forest, bearing date October 22, 1896. It was further adjudged that the proceeds derived from the sale of the remaining bonds and warrants, representing thirty per cent. of the amount earned by the contractor Forest and retained by the city, and the whole amount earned by the bondsmen in carrying out the contract, be applied *pro rata* to the payment of the claims of the laborers, who are plaintiffs, in the amounts found to be due them, respectively, by the court, and to the claim of Fred S. Twitchell, upon his assignment from J. L. Taylor of the latter's claim for lumber furnished by him for said improvement, and that the plaintiffs (laborers) and the defendant Fred S. Twitchell have judgment over against the bondsmen, John Dowling, Rosa A. Dowling, George Haisch, and Charles H. Tracy, for any deficiency after the application of the proceeds from the sale of the said bonds and collection of said warrants upon their respective claims as adjudged to be due them. The court ordered the costs of the suit to be paid out of the fund in court, and no costs were allowed either to the plaintiffs or defendants. From this judgment and decree the plaintiffs have appealed.

It is contended by the appellants that the contract between the city and Forest was an entire contract, and that Forest, having abandoned it before it was completed, had no legal claim thereunder against the city, and that his assignees have no right to any part of the fund in controversy, by virtue of his pretended assignments. In other words, it is claimed that the trial court erred in holding that the claims of the several assignees of Forest, above mentioned, were valid and payable out of the fund then due under the contract, according to their priority. Several authorities are cited by appellants in support of their contention, and it may be conceded that a party to an entire contract, who has performed it in part only, cannot ordinarily recover compensation for such part performance from the other party, provided such other party is himself without fault. If Forest, after he quit work, had sued the city to recover the value of the labor and material furnished under his contract, the city could probably have successfully defended upon the ground that the contract was entire and had not been performed, and that the city was not to blame for his dereliction. But this is not such a case. Here the city bound itself by its contract to withhold thirty per cent. of the contract price of the improvement for the benefit of laborers and material men, and it is conceded that it performed that part of its obligation. It also agreed to pay the contractor the remaining seventy per cent. monthly, as the work progressed, upon estimates made by its engineer. This, in effect, it also did, in part, at least, by delivering a bond to the contractor and accepting his orders in favor of the various parties from whom he obtained money under the pretense that he needed it to pay for labor and materials. Up to the time these transactions occurred, it does not appear that the city, or its officers, had the faintest suspicion that Forest did not

intend to fulfill all the obligations of his contract. At the time it did so, the city had a perfect right, under the provisions of the contract, to deliver the bond and to accept the orders drawn on the fund then in its custody. These orders constituted an equitable assignment of so much of the fund upon which they were drawn as was necessary for their payment. *Seattle v. Liberman,* 9 Wash. 276 (37 Pac. 433); *Spain v. Hamilton's Admr.,* 1 Wall. 604.

And these assignments, being valid when made and assented to by the city, were not invalidated by the subsequent default of Forest. It is true that the city, by virtue of a provision of the agreement which we have hereinbefore noted, *might* have withheld all payments from the contractor until it was satisfied that all just claims for labor and materials had been fully paid; but it does not follow from that fact, as contended by the learned counsel for appellants, that it was obliged to do so, and that, having done otherwise, it should now be held to be a trustee of the laborers and material men, and, as such, liable to them directly for the amount of the fund assigned and of the bond delivered to the contractor. If these appellants had had a lien upon this fund, as they had upon the thirty per cent. of the amount of the monthly estimates which was withheld by the city, there would be at least some ground for the claim that the city is their trustee. But, in the absence of such lien, this contention cannot be sustained.

It is further claimed that the bondsmen, having completed the improvement, thereby became subrogated to all the rights the city had or could enforce against their principal, Forest, and consequently have the right to demand that the moneys which might have been withheld during the progress of the work be paid to the laborers and material men, to the entire exclusion of the assignees of the

contractor and holder of the bond delivered to him. But what we have already said in effect disposes of that contention. The city, as we have seen, claimed no right in or to the fund earned and assigned by Forest; and therefore, so far as that fund is concerned, there is no right to which the appellants could be subrogated. Certainly Forest could not justly claim that his assignments were invalid, and his bondsmen, having assumed and performed his contract, cannot claim anything which he could not. After the contractor quit work, and while his bondsmen were in charge of it, the city withheld all payments until the improvement contracted for was completed; and after this action was commenced, it deposited the bonds and warrants which were due under the contract in court, to be distributed as the court might be advised. This we think was all that it could reasonably be required to do in the premises.

It appears to us that the judgment of the superior court was right, and it is therefore affirmed.

DUNBAR, C. J., and REAVIS, J., concur.