[No. 14304.   Department Two.   April 18, 1918.]

NATIONAL SURETY COMPANY, *Appellant*, v. AMERICAN
SAVINGS BANK & TRUST COMPANY, *Respondent*,
BRATNOBER LUMBER COMPANY *et al., Defendants.*[1]

APPEAL—REVIEW—DISCRETION—MOTION TO DISMISS.   The denial
of a motion to dismiss for want of prosecution, will not be disturbed
on appeal except for abuse of discretion.

MUNICIPAL CORPORATIONS—IMPROVEMENTS — ASSIGNMENT BY CON-
TRACTOR—CONSTRUCTION—VALIDITY AS AGAINST CLAIMANTS.   A con-
tractor's assignment to a bank of all sums to come due from the
city, made for the purpose of financing the work, which provided
that it shall not be valid as against claims for labor and materials,
does not make the money a trust fund in the hands of the bank for
the benefit of labor and material claims accruing and filed with the
city after the seventy per cent of the estimates were paid to the
bank as earned by the contractor, who was not in default, the inten-
tion being to authorize the city to pay to the bank what it might
have paid to the contractor.

SAME.   Since such an assignment is not an appropriation of the
fund, until actual payment, and then only *pro tanto*, it passes abso-
lute title to each installment of the money to become due to the con-
tractor, subject only to any claims for labor or material then exist-
ing and of which the city has notice when the payment was made;
and neither the city, claimants, nor the contractor's surety could
recover the money.

SAME—IMPROVEMENTS—ASSIGNMENTS BY CONTRACTOR—RELEASE OF
FUNDS ASSIGNED—RIGHTS OF SURETY AND ASSIGNEE.   Where the abso-
lute title to money earned by a contractor had passed and the money
had been paid to the contractor's assignee, a bank that had been
financing the work, and to whom the contractor was heavily in-
debted, the surety's written request to the bank to release certain
sums in its possession for the purpose of paying claims, raises an
implied promise by the surety to repay the bank, if the contractor
did not, where the surety was thereby relieved from the necessity
of paying the claims, and in its request expressly agreed that the ·
bank should forfeit none of its rights by releasing the money; not-
withstanding the parties were not sure of their rights under the
assignment.

INTEREST — CLAIMS FOR MONEY — IMPLIED PROMISE — LIQUIDATED
AMOUNTS.   Where the amounts held by a contractor's assignee and

[1]Reported in 172 Pac. 264.

released, on the request of the surety, for the payment of claims, under an implied promise to repay the same, if the contractor did not, were liquidated, interest is properly allowed on their recovery by the assignees.

Appeal from a judgment of the superior court for King county, Jurey, J., entered February 2, 1917, upon findings in favor of cross-complainant, in an action of interpleader, tried to the court. Affirmed.

*C. B. White,* for appellant.

*Farrell, Kane & Stratton,* for respondent.

ELLIS, C. J.—In December, 1909, one Paul Steenstrup entered into a contract with the city of Seattle for the improvement of Western avenue. He furnished the statutory bond conditioned as required by the act of 1909, Laws of 1909, p. 716, Rem. Code, § 1159, with the National Surety Company as surety. To finance the work, the contractor made an arrangement with American Savings Bank & Trust Company to advance the necessary money as the work progressed, giving to the bank an assignment of all moneys to become due under the contract. This assignment was on a city form, and at its foot, beneath the contractor's signature, was printed: "This assignment is not valid as against any claims for labor, material, provisions and goods supplied and furnished in the prosecution of this contract." This assignment was filed with the city. Under this arrangement the bank advanced, from time to time, considerable sums, applying moneys received from the city on monthly estimates in partial repayment. Before the completion of the work, numerous claims for labor and materials furnished to the contractor in the prosecution of the work were filed with the city as claims against the bond. After the work was completed, in June, 1911, the National Surety Company brought an action interpleading the various

claimants to adjudicate and determine their claims. The American Savings Bank & Trust Company was made a party defendant as asserting some claim to the thirty per cent of the contract price for the work reserved by the city under the usual provision in the contract requiring such reservation to protect claimants for work, labor and supplies furnished. Plaintiff prayed that any claim of the bank be adjudged inferior to all valid claims for labor and material.

The bank filed its original answer and cross-complaint, parts of which plaintiff moved to strike. Owing to the difference in the issues, the bank requested that the cause be continued as to it until the claims for labor and material had been finally determined. The postponement was granted upon a stipulation signed by the respective attorneys for plaintiff and the bank that it should be without prejudice or effect upon the rights or liabilities of either of the parties. The case proceeded to judgment as to the other defendants, and on appeal was finally determined in this court in 1912. *National Surety Co. v. Bratnober Lumber Co.,* 67 Wash. 601, 122 Pac. 337. In January, 1915, plaintiff moved for a dismissal of defendant bank's cross-complaint for want of prosecution. The motion was denied.

On January 27, 1916, the bank filed an amended answer and cross-complaint setting up two causes of action. With the first of these we are not concerned. The court denied a recovery thereon and the bank has not appealed. For its second cause of action the cross-complainant set up its assignment from the contractor, its reception of money from the city thereunder which it is alleged it had the right to apply upon the contractor's indebtedness to it, and avers that, in November, 1910, the surety company agreed with the bank that, if it would allow the money to be placed in a joint

account of the contractor and the surety company for use in finishing the contract, the surety company would protect the bank from loss thereby. It is then averred that, pursuant to such agreement, the bank placed to such account $7,200, $2,400, and $1,000 of the moneys received by the bank from the city as proceeds of Steenstrup's contract with the city. Judgment for $10,600 was demanded. These allegations were traversed by reply.

The evidence was voluminous. We shall indicate no more than its salient features. By November, 1910, the bank had advanced to the contractor over $30,000, a large part of which was unpaid. It declined to make further advances. On the November estimate of work performed on the contract, it received from the city under its assignment $7,200. The surety company thereupon delivered to the bank a writing as follows:

"November 26, 1910.

"American Savings Bank & Trust Company,
"and Mr. James P. Gleason, Manager,
"Seattle, Washington.

"In the matter of the contract of Mr. Paul Steenstrup on Western avenue, the National Surety Company hereby consents that you may pay and requests you to pay the money received on estimate either yesterday or today, amounting, as I understand it, to about $7,200, to laborers or materialmen who have claims against Mr. Steenstrup, or allow Mr. Steenstrup to so make such payments, you to forfeit no rights by allowing this money to be so used and applied.

"National Surety Company,
"By John Roberts,
"Resident Vice-President."

The bank, in compliance with this request, refrained from applying this money on Steenstrup's notes, but placed it to Steenstrup's credit and allowed it to be checked out by Steenstrup under the supervision of

the surety company in payment for labor and material supplied in further prosecution of the work. On the December, 1910, estimate the bank received from the city $2,400. This sum, in compliance with a like written request from the surety as before, was placed to Steenstrup's credit and used in the same way. There is no evidence that, when these estimates were paid by the city to the bank, any claims for labor or material had been filed with the city or that the city had any notice or knowledge of any unpaid claims, if there were any.

By January, 1911, the $9,600 turned over to Steenstrup on these two requests had been exhausted. More money being needed, the surety company indorsed Steenstrup's notes to the bank for an additional loan of $10,000. This was placed in a joint account of the surety company and Steenstrup to be checked against only on the signatures of both. These notes were afterwards paid by the surety company and are not here involved, except as explaining the overdraft created in compliance with a third request by the surety company as follows:

"February 14, 1911.
"American Savings Bank & Trust Company,
    "J. P. Gleason, Manager,
        "Seattle, Washington.
"Gentlemen:
    "In the matter of contract of Paul Steenstrup on Western Avenue.
    "In the matter of the joint account of Paul Steenstrup and the National Surety Company in your bank, request is hereby made on you to allow an overdraft of not to exceed one thousand dollars ($1,000) on checks signed as heretofore on said account, and when the next estimate is received from the city on the Western Avenue contract for which said account is carried you are requested to place from said moneys allowed and paid on said estimate such amount as may be over-

drawn to the credit of said account before applying such estimate on the notes of Paul Steenstrup held by your bank.    Yours very truly,

"National Surety Company,
"By John W. Roberts,
"Resident Vice-President.
"Geo. W. Allen,
"Resident Assistant Secretary."

The overdraft to the amount of $1,000 was permitted, and the bank's evidence tended to show that, instead of applying moneys thereafter received on estimates from the city to the payment of Steenstrup's unpaid notes, the bank, as requested in the above quoted writing, gave the surety company credit for it, thus giving the debt created by the overdraft the same status as the money turned over on the other two orders.

The court found in favor of defendant bank on its second cause of action and rendered judgment in its favor for $10,600, and interest, in all, $14,428.60. Plaintiff appeals.

It is first contended that the court erred in refusing to dismiss respondent's cross-complaint for want of prosecution. The motion to dismiss on this ground is a matter within the discretion of the trial court. The exercise of that discretion will not be disturbed except for abuse. *Loving v. Maltbie,* 64 Wash. 336, 116 Pac. 1086. We have read and carefully considered the affidavits on both sides addressed to this motion. An extended discussion would serve no useful purpose. We are not convinced that there was any abuse of discretion in this case.

On the merits, the crux of this controversy is this: Did the city have the right to pay to respondent bank the seventy per cent of the monthly estimates here involved? The solution of this question depends upon the

construction of the assignment in the light of its purpose and subject-matter. Appellant contends, in substance, that the assignment, by reason of its being subject to claims for labor and material, made this money a trust fund in the hands of the bank with which to pay such claims, though accruing and filed with the city after these estimates were earned by the contractor and paid to the bank. We cannot accede to this view. The conceded purpose of the assignment was to enable the contractor to finance the work. It must be assumed, therefore, that the parties thereto intended that the assignment should authorize the city to pay to the bank and the bank to receive, on each estimate when it accrued, whatever the city in pursuance of its contract would have paid to Steenstrup on each such estimate in the absence of the assignment. This would have been the so-called contractor's seventy per cent of each monthly estimate, if there were then no unpaid claims for labor or material filed with the city, the contractor not then being in default. *Dowling v. Seattle,* 22 Wash. 592, 61 Pac. 709; *Maryland Casualty Co. v. Washington Nat. Bank,* 92 Wash. 497, 159 Pac. 689; *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co.,* 93 Wash. 635, 161 Pac. 473; *Title Guaranty & Surety Co. v. First Nat. Bank,* 94 Wash. 55, 162 Pac. 23; *Van Doren Roofing & Cornice Co. v. Guardian Casualty & Guaranty Co.,* 99 Wash. 68, 168 Pac. 1124.

In the case of *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co., supra,* upon the authority of *Dowling v. Seattle* and *Maryland Casualty Co. v. Washington Nat. Bank, supra,* we held that an absolute and unqualified assignment by the contractor of any fund thereafter to become due to him and not reserved by his contract for the protection of laborers and materialmen, the assignment having been accepted by the city prior to the contractor's default

and prior to any notice of nonpayment for labor and material, was a valid appropriation of such fund prior and superior to any rights of laborers and materialmen in the fund, and hence superior to any right of subrogation in the surety on the contractor's bond. In such a case, a payment by the city to the assignee, even after claims for labor and material had been filed, would be valid as to all but the reserve fund. In that case, however, it is distinctly indicated that the assignment was not, as here, expressly subject to claims for labor and material supplied in the prosecution of the work. An assignment so qualified is not an appropriation of the fund. Under such an assignment, as pointed out in *First Nat. Bank v. Seattle,* 71 Wash. 122, 127 Pac. 837, the appropriation of the fund does not take place until actual payment to the assignee, and then only *pro tanto.*

In the last cited case, the assignment to the bank of the contractor's seventy per cent fund was, as here, expressly subject to claims for labor and material supplied in the progress of the work. In that case, however, contrary to the case here, the money over which the contest was waged as between the surety company and the bank as assignee of the contractor was still in the hands of the city. It was the last part of the seventy per cent fund, which had been held up by the city evidently in anticipation of claims for labor and material under a provision of its contract with the contractor *permitting* the city, but not *requiring* it, to hold up any part of the contract price until satisfied that all claims for labor and material had been paid. In that case, marking a supposed distinction between that and the *Dowling* case, we said:

"Here the balance of this seventy per cent fund has not been paid the contractor, and the city has knowledge of these liens for labor and materials. In that case we held that the holders of the bonds so issued were en-

titled to their proceeds because the payments, being justified when made, were not invalidated by the contractor's subsequent default. In that case the payment was made when due under the contract, without notice of adverse claims. In this case the payment has not been made, and there is notice of adverse claims such as, under the language of the contract and the assignment, are entitled to preference.''

This language clearly indicates that, had the money involved in the *First Nat. Bank* case been actually paid to the assignee bank by the city prior to the contractor's default and without knowledge or notice of any unpaid labor and material claims (which was actually done in the case before us), the payment would have been held valid and the bank would have been held entitled to retain the money as against subsequently filed claims, notwithstanding the qualified nature of its assignment.

If the above language from the case of *First Nat. Bank v. Seattle* is still adhered to, the assignment must be held to be an assignment of each installment of the money to become due to the contractor under the contract as earned, subject only to any claims for labor or material then existing and of which the city has notice when such installment falls due, and subject to the right of the city to hold up any such installment in anticipation of such claims. If, therefore, the city actually pays any such installment to the assignee without notice of labor or material claims and before default of the contractor, such payment must be held to pass an absolute title to the money under the assignment. The assignment was made for the very purpose of raising money with which to finance the performance of the contract. The contractor had the right to make an absolute assignment, unqualified by any reference to labor and material claims, of this seventy per cent which was to be paid to him on monthly estimates.

He made an assignment not absolute, but subject to claims for labor and material. There were no such claims when this money was paid. In order to accomplish the purpose intended; viz., that of aiding the contractor to finance the contract, the assignment must be construed as passing an absolute title to any part of the seventy per cent fund coming due to the contractor, if actually paid to the assignee at a time when there were no claims for labor or material filed and when the contractor was not in default on his contract.

Appellant recognizes the force of our decision in the case of *First Nat. Bank v. Seattle*, but asks: How did the bank get a better right to this money merely by getting actual possession of it? We have already answered this question in our construction of the assignment. The following considerations make that construction almost imperative: While the original contract between the contractor and the city is not in the record, it is recognized in the briefs on both sides that the contract contained the usual provision authorizing the city to pay to the contractor on monthly estimates seventy per cent of the money earned each month as the work progressed, but required the city to withhold each month the other thirty per cent as a fund to meet claims for labor and material which might thereafter be filed. Though it is not mentioned in the briefs, we assume that the contract or specifications therein referred to contained the other usual provision that the city might withhold any and all payments under the contract until satisfied that all labor and material supplied for the work had been paid for; at any rate, this assumption is the one most favorable to appellant. Such a provision, as pointed out in *Dowling v. Seattle*, *supra*, and again in *Northwestern Nat. Bank of Bellingham v. Guardian Casualty & Guaranty Co.*, *supra*, amounts to no more than a permission to the city to

exercise a discretion in the premises. It creates no duty to any one on the city's part. The assignment from the contractor to the bank was made on a printed city blank. The statement that the assignment was not to be valid as against claims for labor and material appears underneath the contractor's signature and was evidently placed there as a recognition of the city's privilege to hold up any or all of the money in its discretion. When, therefore, the city, without notice of claims and before default of the contractor, paid to the assignee the seventy per cent estimates, it acted within its rights and no one can complain. Neither the city nor labor or material claimants could then recover the money; *a fortiori*, the surety could not.

There is considerable controversy as to whether or not the contract was taken over and completed by the surety company in the contractor's name. But the view which we take of the assignment and the transaction between the surety company and the bank whereby, at the surety's request, the bank relinquished the money in its possession for use in further carrying on the work, makes it immaterial whether the work was actually completed by the surety or by the contractor. In either case the release operated to relieve the surety of the immediate necessity of furnishing money to carry on the work, and its agreements that the bank should forfeit no rights by so doing were made for no other purpose.

Appellant argues that it made no promise to repay this money. But, as we have seen, it was at the time the bank's money. It is manifest that, when the bank released it at the request of the surety company, which in writing agreed that the bank was to forfeit no rights by so doing, there arose an implied promise to repay it if Steenstrup, the contractor, did not. The

surety cannot retain the benefit and deny the liability. Appellant insists that, when it made these written requests for the release of the money by the bank, it was evident that the bank had no rights that it could waive, and adds: "The bank well realized that it could not demand that the surety company promise to repay this money which was, of course, going to potential and possible lien claimants." It may be admitted that neither party was then certain as to the bank's rights. But the surety company, in substance and effect, agreed to protect the bank's right in the premises whatever those rights might be. The fact that neither party seemed sure at the time as to just what those rights were can make no difference in the final effect and result of the undertaking. The surety company cannot be heard to say that, because those rights were in law greater than it had supposed, therefore it is not bound by its agreement that they should be preserved.

Appellant frequently states that the $1,000 item was money never in the hands of the bank, but adds: "The overdraft was from *the bank's own funds,* not from the proceeds of the contract." It was certainly in the bank's hands before the overdraft was permitted and was a loan pure and simple to the surety company and Steenstrup. If it was ever paid, it was paid from money which, so far as the record shows, was money which the bank would have had the right to have applied on Steenstrup's old notes, and the trial court so found. In fact, that is exactly what the surety company requested should be done in its communication of February 14, 1911. The request was in itself a recognition of the bank's right to apply the estimates on the Steenstrup notes.

Finally, appellant contends that no interest should have been allowed on these claims. But the amounts claimed were liquidated. They were in substance

claims for money loaned. We know no legal reason for withholding interest. The judgment is affirmed.

MOUNT, CHADWICK, and HOLCOMB, JJ., concur.