[No. 21309.   Department Two.   November 30, 1928.]

FIDELITY & DEPOSIT COMPANY OF MARYLAND, *Appellant*,
v. THE CITY OF AUBURN *et al., Respondents.*[1]

*Grinstead, Laube & Laughlin* and *R. John Lichty,*
for appellant.

*Knickerbocker & Hunt,* for respondents.

FRENCH, J.—In April 1927 the Dillon Concrete Company entered into a contract with the city of Auburn for the construction of a septic tank to be used by the city in connection with its sewer system.  The contract was in the form usually used by cities, and provided that the contractor should pay for all materials purchased by him in connection with this work, and should pay the wages of all persons employed.  It also

[1]Reported in 272 Pac. 34.

provided, "The city of Auburn may withhold any and all payments under this contract until the provisions of this section have been fully complied with." It provided also that, on the tenth day of the month following the issuance of the estimate by the engineer, the city would deliver warrants to the contractor in an amount equal to eighty-five per cent of the estimate, and provided for retaining the balance of fifteen per cent for a period of thirty days after the final completion of the work and its acceptance.

Appellant, Fidelity and Deposit Company of Maryland, furnished a bond for the contractor in the full amount of the contract price. At the time of the execution of the bond, the Dillon Concrete Company executed to the bonding company an indemnity agreement, in which it agreed

". . . to assign, transfer and set over, and does or do hereby transfer, assign and set over to the company as collateral, to secure the obligations herein and any other indebtedness or liability of the undersigned to the company, such assignment to become effective as of the date of said contract bond, but only in event of any such abandonment, forfeiture or breach of contract, . . . (b) all his, its or their rights in, and growing in any manner out of, said contract or said bond or bonds; . . . (d) any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture or breach or that thereafter may become due."

The work progressed in due course until the early part of October, at which time the contractor, needing money, applied to the respondent First National Bank of Auburn for a loan, representing to the bank that there was due and unpaid on the contract, exclusive of the retained percentages, something like seven thousand dollars, no part of which had been pledged or

assigned. The president of the bank made inquiries of the city clerk and the city engineer as to the amounts due and as to whether there was any assignment thereof, and, being informed that there was an amount in excess of six thousand dollars still due the contractor, exclusive of the retained percentages, and that no part of it had been assigned, loaned the contractor fifty-seven hundred dollars, which money was all paid out by the contractor for materials and labor used on the job. As security for this loan the contractor executed to the bank an assignment of all money due or to become due under the contract, which assignment was duly filed with the city clerk and called to the attention of the city council, and record of the notice thereof was made in the minutes of the council meeting.

On the 28th day of October, claims of laborers and materialmen began to be filed in the office of the city clerk of the city of Auburn. In the meantime, however, the contractor had completed his contract, and the entire fund in controversy had accumulated. On the first day of November, appellant filed notice with the clerk of the city that there were outstanding and lienable claims in excess of seven thousand dollars, and requested that the city make no further payments to either the contractor or his assignee, and on the 23d day of November notified the city clerk of the assignment which had theretofore been made to it by the Dillon Concrete Company, and filed with the city clerk a copy of such assignment; and on December 6, presented the assignment to the city council. At this same meeting, held on the 6th day of December, there was submitted to the city council the last monthly estimate of the city engineer, which showed retained percentages in the hands of the city of $2,790.72, and a balance of $3,808.15 due the contractor on his monthly estimate. The city council passed a resolu-

tion directing the city clerk and the mayor to issue a warrant and deliver the same to respondent bank in the sum of $3,808.15. The Dillon Concrete Company being insolvent, the appellant commenced this action to enjoin the city from delivering the warrant to the First National Bank. The city answered, setting up the fact that it waived its right to retain any amount in excess of the retained percentages, and made payment to the First National Bank. The First National Bank of Auburn answered, setting up its claim to the warrant by virtue of its assignment and by virtue of the fact that the money advanced to the contractor had been used by it in completing this contract, and alleged that its assignment was in fact a prior assignment to that held by appellant, by reason of the equities involved.

The case was tried on an agreed statement of facts. From a judgment in favor of the respondents, the bonding company appeals.

Two questions are presented by appellant; first, that by the doctrine of subrogation the surety is entitled to all the rights of the city of Auburn.

Contrary to the rule in many states this court by an unbroken line of decisions has held adversely to appellant's contention, and there is therefore no need to again or further discuss the question. Among other cases holding contrary to appellant's view, see: *Dowling v. Seattle*, 22 Wash. 592, 61 Pac. 709; *Maryland Casualty Co. v. Washington National Bank*, 92 Wash. 497, 159 Pac. 689; *National Surety Co. v. American Savings Bank & Trust Co.*, 101 Wash. 213, 172 Pac. 264.

The second question raised is that, as the appellant surety is the first assignee in point of time, by reason of the indemnity agreement, it is therefore entitled to priority over the respondent bank. It must

be remembered that the assignment held by appellant is not absolute, but conditional, the provision therein contained being:

"Such assignment to become effective as of the date of said contract bond, but only in event of any such abandonment, forfeiture or breach of said contract, or the breach of any of said bonds or of any of the agreements herein contained."

A breach having occurred, the indemnity agreement may, as between the bonding company and the contractor, relate back to the inception of the contract. But as between the bonding company and the bank a far different question arises. By the express provisions of the contract, the contractor was entitled to collect from the city all funds represented by monthly estimates, so long as the work was not in default. Eighty-five per cent of the price of the work was to be paid on these monthly estimates, and no limitation was placed on the right or power of the contractor to collect these payments and expend them. The bonding company had no control of any kind over these payments unless the contractor breached the contract, and could assert no claim until this contingency arose. It was these estimates that were pledged to respondent, and the money therefrom was used in the actual prosecution and completion of the work, thus redounding directly to the benefit of the surety company.

It is clear from the record that, until the actual completion of the work, neither the surety company, the bank nor the city had notice of the default of the contractor, and that the contractor having an absolute right to collect the estimates, it must follow that he could likewise assign the estimates. *State ex rel. State Bank v. Scott,* 102 Wash. 510, 173 Pac. 498. *Nickerson v. Hollet,* 149 Wash. 646, 272 Pac. 53.

This is not simply a question of whether or not, as between successive assignees, assignments of choses in action take precedence in order of priority of the date of notice to the debtor. In such cases there is a plain conflict of authority. By the English rule, when there are successive assignments, the assignee of the chose in action who first gives notice of its assignment to the debtor is first in priority, and that rule is followed in many of our states. But on the contrary, a large number of the courts have severely criticized the rule. As far as the courts of the United States are concerned, there is equally good authority holding that the assignment first in point of time is first in priority.

In so far as we are able to determine, the question has never been decided by this court, and it seems to us that there are certain other matters involved, and that the question presented by the facts in this case complicates what seems to be the single second question presented by appellant's brief. The contractor in the instant case had, at the time of the assignment, an absolute right to collect the estimates. The bonding company at that dàte, there having been no default, had as yet no effective, operating assignment, but only a conditional one. The bonding company in this case issued its indemnity agreement, having full knowledge of the right of the contractor to collect the estimates, and knowledge that by the collection of these estimates contractors are generally able to finance their contracts. The bank also had full knowledge of this provision of the contract, and after diligent inquiry as to there being prior assignments, advanced money to finance the contract, and this money was actually expended in doing the work under the contract, and this at a time when the contractor had an absolute right to collect the estimates and, except for his subsequent default, an absolute right to assign the same. It

matters little which rule we adopt, the assignment to the bank was, under the holdings of this court, entitled to priority.

"As said in the *Dowling* case, 'These assignments being valid when made and assented to by the city, were not invalidated by the subsequent default' of the contractor. Any other view would make it impossible for the ordinary contractor to finance a large contract by obtaining credit with a bank on the strength of its performance.

"We find no merit in the claim that the bonding company has a superior equity in this fund over that of the bank. It has no equity in the fund as against the bank, which paid its money on the strength of assignments of the fund at a time when the contractors had full right to collect and dispose of the fund as they saw fit. Moreover, it is an admitted fact in this case that the money advanced by the bank was actually used by the contractors in the performance of the contract, thus diminishing the bonding company's liability by just the amount advanced. The equities are obviously with the bank." *Northwestern National Bank v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, Ann. Cas. 1918D 644.

See, also, *Title Guaranty & Security Co. v. First National Bank*, 94 Wash. 55, 162 Pac. 23; *Maryland Casualty Co. v. Hill*, 100 Wash. 289, 170 Pac. 594; *State ex rel. State Bank v. Scott, supra.*

The case of *Detroit v. Fidelity & Deposit Co. of Maryland*, 240 Mich. 213, 215 N. W. 394, while construing the identical assignments, is really dealing with retained percentages in place of estimates, and while some statements therein contained are contrary to the opinions herein expressed, the case was really decided on the doctrine of subrogation.

The money advanced by the bank having all been used for the final completion of the contract, and there having been no default at the time the assignments

were made, or at the time the money was earned, and neither the bank nor the city having any knowledge whatsoever of any rights the bonding company may have had, the equities were all with the bank.

The judgment is affirmed.

FULLERTON, C. J., PARKER, MAIN, and ASKREN, JJ., concur.