[No. 29823. Department One. March 29, 1946.]

NORTH PACIFIC BANK, *Respondent*, v. PIERCE COUNTY *et al.*,
*Defendants*, MARYLAND CASUALTY COMPANY
*et al.*, *Appellants.*[1]

[1] Reported in 167 P. (2d) 454.

*Peterson and Duncan,* for appellants.

*A. L. Lee,* for respondent.

STEINERT, J.—Plaintiff brought suit upon a written assignment of funds due or to become due to a general contractor engaged in the performance of public work. The action was converted into one in the nature of interpleader by the answer and cross-complaint of the municipality holding the funds and its contemporaneous payment of the amount of money then earned by the contractor into court. A bonding company and the assignee of certain lien claimants intervened in the action and claimed the entire funds. The Federal government, through its internal revenue department, also intervened and laid claim to a portion of the funds, on account of income taxes alleged to be due and owing from the contractor.

The cause was tried to the court, without a jury, and resulted in a judgment in favor of the plaintiff. The intervening parties appealed, but, since then, the appeal of the Federal government has been dismissed, leaving only the

bonding company and the assignee of the lien claimants as parties appellant.

On April 24, 1944, Pierce county, through its board of county commissioners acting in unison, and one Clarence Nees entered into a written contract by the terms of which Nees agreed to produce and furnish to the county ten thousand cubic yards of crushed rock for the improvement of a county road project, at the stipulated price of ninety-four cents a cubic yard. The contract provided that Nees should do all the work and furnish all tools, materials, and equipment necessary for the completion of the operation, in accordance with, and as described in, certain plans and specifications which by reference were made a part of the contract, and that Nees should

". . . provide and *be at the expense* of all materials . . . and things of every description that may be requisite for . . . constructing and completing the work provided for in this contract and every part thereof." (Italics ours.)

On that same day, April 24th, Nees made written application to Maryland Casualty Company, one of the appellants herein, for a bond to be given as security for his performance of the contract. The form of application required Nees to supply in detail certain information to the bonding company and also contained a conditional covenant of assignment by Nees to the company of all funds due or to become due under the contract. Further reference to the required information and to the covenant of assignment will be made later, although it may be stated at this point that notice of this assignment was not given to the county until September 21, 1944.

Pursuant to Nees' written request, the bonding company, as surety, on April 24th, executed and caused to be delivered to Pierce county its bond, signed by Nees as principal, in the sum of ninety-four hundred dollars, in accordance with the requirements of Rem. Rev. Stat., § 1159 [P. P. C. § 180-41]. At the same time, the bonding company in writing approved and ratified the contract between Nees and the county.

The condition of the bond executed by the bonding company was that:

"If the said CLARENCE NEES shall faithfully perform all the provisions of such contract and pay all laborers, mechanics and sub-contractors and materialmen, . . . then this obligation to be null and void, otherwise to remain in full force and effect."

On June 9, 1944, which was after the contract and accompanying bond had been signed and delivered, but before operations under the contract had begun, Nees executed to North Pacific Bank, respondent herein, a written assignment reading as follows:

"KNOW ALL MEN BY THESE PRESENTS: For value received, I, CLARENCE NEES, hereby sell, assign, transfer and set over unto the North Pacific Bank, Tacoma, Washington, *all monies now due me or to become due me under a certain contract with the Board of County Commissioners of Pierce County dated April 24, 1944,* for improvements at the 9th Street Pit—A L 99 and authorize you to deliver any and all warrants to be issued under the above mentioned contract to the said North Pacific Bank who is hereby authorized to endorse my name upon the same and receive from the county treasurer any and all funds due or to become due thereon." (Italics ours.)

Notice of this assignment was given by the bank and accepted by Pierce county and the county commissioners, and a copy of the instrument itself was filed with the county auditor, whose chief deputy endorsed thereon his approval, all on June 9, 1944. Thereafter, and prior to July 29, 1944, the bank advanced to Nees sums aggregating $4,026.

Nees entered upon the performance of his contract on June 19, 1944, and between that date and July 29, 1944, produced and furnished to the county 3,300 cubic yards of crushed rock, which, under the stipulated contract price of ninety-four cents a cubic yard, had a value of $3,102. At that stage of the operations, however, Nees discontinued work on the job and in the following September defaulted on his contract, whereupon the county tendered performance thereof to the bonding company. The company accepted the tender and prosecuted the work to its comple-

tion. On January 4, 1945, the county accepted the work as thus completed.

During the time that Nees was still engaged in the performance of the contract, he incurred certain labor and material bills amounting to $3,461.21, for which amount lien claims against the *bond* were filed within thirty days after the completion of the contract and acceptance of the work, as required by Rem. Rev. Stat., § 1161 [P. P. C. § 180-47]. Certain of the lien claimants assigned their claims, aggregating $2,566.46, to Premier Investment Company, the other of the two appellants herein.

Respondent instituted this action against Pierce county to recover upon its assignment from Nees the sum of $2,-636.70, which represented the difference between $3,102, the amount earned by Nees under the contract up to the time of his default, and the sum of $465.30, being the fifteen per cent reserve which the county was required by Rem. Rev. Stat., § 10320 [P. P. C. § 180-49], to retain for the protection of mechanics, subcontractors, and materialmen.

The county appeared in the action by answer and cross-complaint, paid the full amount of $3,102 into court, and asked that all parties claiming the funds be impleaded and the money distributed among such persons as the court should deem to be rightfully entitled thereto.

After all interested parties had set up their claims in the action, a hearing was held, and at the conclusion thereof the court awarded to the respondent bank the sum of $2,-636.70, as prayed for, less an attorney's fee of fifty dollars allowed to the county; awarded to the appellant Premier Investment Company, as assignee of the lien claimants, the sum of $465.30, being the amount of the statutory reserve fund; and, further, rendered judgment in favor of the investment company against the bonding company in the sum of $2,101.16, representing the balance of the amount of the assigned claims held by it, and the further sum of one hundred dollars as an attorney's fee. The bonding company and Premier Investment Company have jointly appealed and are represented by the same attorney.

Before stating the question to be decided on this appeal,

we deem it appropriate to make reference to certain details which the record before us discloses or fails to disclose:

First. Respondent's counsel states in his brief that the bank advanced the moneys to Nees in order to make it possible for him to perform the contract. That actually may have been the fact, and we suspect that it was, but there is no proof of it in this record. Had there been evidence to that effect, our problem would be relieved of one of the contentions made by the appellants herein.

Second. Respondent's counsel also sets out in his brief certain provisions alleged to be included in the specifications mentioned above, which by reference were made a part of the contract between Nees and the bank. The difficulty here is that the specifications were not set forth in the body of any of the pleadings and were not offered in evidence as exhibits, or parts thereof, or otherwise; in short, they do not in any way appear in the record before us. Consquently, as insisted by the appellants, the specifications cannot be considered, even though they are in part quoted in respondent's brief.

Third. The contract between Nees and the county, which counsel for the appellant bonding company contends should be so construed as to grant the company the relief it seeks, did not require Nees to *pay* the laborers, mechanics, and materialmen; it simply required that he should "provide and be at the expense of" everything that was requisite for the completion of the work. So far as the county was concerned, the consideration moving to it, in return for the amount it was to pay Nees, was simply that Nees should do the necessary work *at his own expense,* regardless of whether or not he ever paid those expenses. It is true that the *bond,* executed by both Nees and the bonding company, required Nees to pay all laborers and materialmen. However, the exaction of such a bond was simply a duty imposed upon the county by Rem. Rev. Stat., § 1160 [P. P. C. § 180-45], in order to provide a source and means of protection to those whose labor and materials had entered into and produced the thing for which the contractor was to be paid. The county having performed that duty, it was

not further obligated, in the absence of any provision in the *contract* to the contrary, to see that the contractor himself actually paid such persons. Respondent here is not seeking to recover from the bonding company, nor endeavoring to enforce any obligation under the company's bond, but is suing simply on an assignment to it of funds earned under the contract between the contractor and the county.

Fourth. The application made by Nees for the bond contained a list of forty-one questions to be answered by him, one of them being:

"If additional money is needed to finance this contract, with what bank have you arranged for a loan, what amount and on what conditions?"

Other questions inquired into the terms of payment for the work and the amount of retainage until completion thereof. Over thirty of those questions, including those just referred to, were left unanswered, although the application specifically stated that it was necessary that all of them should be answered. Evidently the bonding company was not interested in the unanswered questions. The application also contained, in small type, as part of an indemnifying agreement, a provision to the effect that, *in the event* of any default by Nees on any of his obligations under the contract or bond, all payments due or to become due under the contract were to be paid to the bonding company, and such covenant was to operate as an *assignment* of such payments due or to become due. This is the assignment referred to above as running from Nees to the bonding company. No copy of the application containing that agreement and assignment was filed with the county, nor was any notice of such conditional assignment given to the county until September 21, 1944, after Nees had defaulted on his contract, and long after he had given an assignment of the funds to the bank.

Fifth. The contract contained no provision for the retention by the county of any part of the funds earned by the contractor in the performance of the work. The only portion of the funds which the county was by law compelled or authorized to retain was the fifteen per cent re-

serve, amounting to $465.30, as required by Rem. Rev. Stat., § 10320.

With this explanation and understanding of the facts shown by the record, we come to the question here to be decided. It may be stated thus: Where a general contractor, having a contract to do public work for a county, makes an assignment for value of all funds due or to become due under the contract, and the assignee gives, and the county accepts, due and timely notice thereof, and thereafter the assignee, in reliance upon the security of the assignment, advances funds to the contractor while he is engaged in the performance of the work and at times when no prior rights by virtue of any positive law have attached to the funds, and where the contract between the contractor and the county makes no provision for the retention by the county of any part of the funds earned by the contractor, over and above the fifteen per cent reserve required by statute to be retained, is the assignee under such circumstances entitled to have awarded to him, to the extent of such advances, the amount earned by the contractor under the contract prior to any default on his part, or, on the contrary, upon the default of the contractor does the surety on the contractor's bond or the assignee of lien claimants have a superior right or equity in such funds?

It is not disputed by the appellants that the transaction between Nees and the bank constituted a valid assignment, for value, and that the subsequent advancements by the bank were made in reliance upon the security of that assignment. It is also clear from the evidence that the county, through the county commissioners, accepted notice of such assignment and that the county auditor not only accepted it for filing but also endorsed his approval thereon. The question nevertheless raised by the appellants, upon the facts hereinbefore stated, is whether the appellants have an equity in the funds here involved superior to the rights of the respondent bank under its assignment of June 9, 1944.

 It is settled law in this state that labor and material claimants have no statutory lien rights against moneys earned by a contractor on public work, other than against

the fifteen per cent reserve fund required by Rem. Rev. Stat., § 10320, to be retained for the protection of such claimants. *Hall & Olswang v. Aetna Cas. Co.*, 161 Wash. 38, 296 Pac. 162, an *En Banc* decision.

In that case the question was propounded and answered by the court as follows:

"What are the statutory rights of the labor and material claimants against the balance owing by the school district [for whom the building was being constructed] upon the construction contract? Section 10320, above quoted, we have seen, requires the retention of fifteen per cent of the moneys earned by the contractor for the protection of labor and material claimants. This is the only statutory requirement touching the retention of any portion of moneys earned by the contractor; so that it is plain that labor and material claimants have no statutory lien rights against moneys earned by the contractor, other than against the fifteen per cent thereof so required to be retained. This, plainly, is but a protection to the labor and material claimants, in addition to the bond required by § 1159, above quoted. So, we conclude that the only statutory rights of labor and material claimants to the contractor's earnings under the contract, are against the statutory fifteen per cent retention of such earnings."

Whether or not labor and material claimants have any *contract* rights in the nature of liens against funds earned by a contractor, over and above the fifteen per cent required by the statute to be retained, depends upon the terms of the construction contract itself. As previously stated herein, the contract here involved made no provision for the retention by the county of any moneys earned under the contract, in excess of the reserve fund.

It is now the accepted rule in this jurisdiction that, where a public improvement contract does not *clearly require* the state or municipality to withhold funds applicable to the payment of a contract, the contractor may effectually assign such funds.

In *United States F. & G. Co. v. Ryan*, 124 Wash. 329, 214 Pac. 433, 39 A. L. R. 109, where this same question was presented, this court cited many prior decisions and gave the substance of their holdings, as follows:

"We think, however, the holdings of those decisions, in so far as they can be considered as shedding lights in our present inquiry, are, in substance, that when, by the terms of a public improvement contract, the state or municipality is *clearly required* to withhold funds applicable to the payment of the contractor as a trust fund for the payment of those furnishing labor and supplies, giving to such person preferred claims against such funds superior to that of the contractor, a surety of the contractor having paid such preferred claims is entitled to the portion of such funds as the persons whose claims it so pays were entitled to; and that when, by the terms of a public improvement contract, the state or municipality is not *clearly required* to so withhold funds applicable to the payment of the contractor, but is merely given an option to do so, one who may pay those furnishing labor and supplies upon the work does not acquire any such preferred claim against the fund which may remain in the hands of the state or municipality applicable to the payment of the contractor. [Citing many cases.]"

It will be noted that, in the cited case, the rule which we have stated above applies also where the municipality is given the *option,* though is not required, to withhold such funds. In the contract involved in the case at bar, not even an option was given to the county.

In *Northwestern Nat. Bank v. Guardian Cas. & Guaranty Co.,* 93 Wash. 635, 161 Pac. 473, Ann. Cas. 1918D, 644, this court, after quoting certain language from *Maryland Cas. Co. v. Washington Nat. Bank,* 92 Wash. 497, 159 Pac. 689, made the following pronouncement:

"This is a distinct holding that it is only where there is a *clear and express reservation in the contract* of a fund to be held up for the benefit of laborers and materialmen that there is any fund the contractor may not effectually assign by an assignment made prior to his default and notice of such default to the board or, as in this case, to the city, and that it is only as to such reserve fund that the labor and material claims have any priority over such assignments, hence only as to such reserve fund that there is any right of subrogation in favor of the bondsmen." (Italics ours.)

In *Pacific Coast Steel Co. v. Old Nat. Bank of Spokane,* 134 Wash. 457, 235 Pac. 947, where previous cases on the

subject were reviewed, this court expressed the rule in this manner:

"The sum total of all these decisions seems to be that, where a contract provides for a specific amount of the contract price to be retained by the municipality for the payment of labor and material, the balance of the estimates may be assigned by the contractor, and that the assignee is entitled to receive all the assigned amounts, if:

"(1) There is no provision in the contract that the municipality may, in addition to the percentage reserved, retain out of the balance amounts sufficient to cover labor and material claims."

The quotation just given is followed by a series of numbered paragraphs relating to instances where a contract does contain a provision for the retention of funds by the municipality. No such provision was included in the contract here under consideration.

In the case of *Hall & Olswang v. Aetna Cas. Co.*, *supra*, where the contract contained a provision *permitting* retention by the municipality of certain funds, the court said:

"The contract provision permitting the district to at all times withhold sufficient funds to complete the building, in addition to its retaining of the statutory fifteen per cent, is manifestly for the exclusive benefit of the district, and gives no right to the labor and material claimants. . . .

"The contract provision that the district, if it deems proper, may retain, in addition to the statutory fifteen per cent of the earnings, enough to satisfy claims and demands of labor and material claimants, manifestly is a mere privilege on the part of the district to make such retention for the benefit of labor and material claimants or not, as it may see fit."

In the case at bar no such privilege of retention was incorporated in the construction contract.

■ A surety on the bond of a contractor engaged in public work has no stronger claim upon the funds due the contractor for work done than have labor or material claimants.

Touching that question, this court, in *Hall & Olswang v. Aetna Cas. Co.*, *supra*, said:

"The surety company's claim of benefit of the surplus $2,005 is apparently rested upon the theory that it has the right of subrogation to the rights of the labor and material claimants to that portion of the fund, or, in the alternative, by virtue of the indemnity and assignment agreement given to it by the contractor, embodied in his application to it to become surety upon his bond. Of course, either of these theories, if successfully maintained, would, in effect, save the surety company from loss in that amount under its suretyship obligation. The first of these theories, we think, we have already shown to be untenable, in view of our conclusion that the labor and material claimants have no right to the surplus $2,005, either under the statute or the construction contract, and, hence, there are no such rights which could pass to the surety company by way of subrogation."

To the same effect, see *Fidelity & Deposit Co. v. Auburn,* 150 Wash. 114, 272 Pac. 34, and cases therein cited.

■ With reference to the assignment which the bonding company took from Nees, the contractor, on April 24, 1944, it will be recalled that this covenant of assignment was included as a part of the indemnity agreement contained in the contractor's application for the bond. The indemnity agreement, although it recited that it was to be effective from its date, was nevertheless conditioned on the occurrence of the contractor's default upon his construction contract. While the indemnity covenant antedated the assignment from Nees to the respondent bank, it did not become operative until the default of the contractor occurred, which was long after the bank had obtained its assignment and advanced the funds on the security thereof. No notice of the indemnity agreement, including the conditional assignment, was given either to the county or to the bank until after the occurrence of the default.

As between the bonding company and the contractor, the indemnity agreement could, upon breach of the contract, relate back to its original date, but as to the bank, which in the meantime had taken its assignment, given notice thereof to the county, and advanced funds on the security thereof, the indemnity agreement could operate only from the time of the default and proper notice

thereof and, even then, only in such a way as would not prejudice the rights of the bank under its assignment. *Fidelity & Deposit Co. v. Auburn, supra; Hall & Olswang v. Aetna Cas. Co., supra.*

■ Appellants contend that respondent is but a simple contract creditor, not having shown that the funds advanced by it went into the construction work or were used to pay lienable items, and that therefore their rights are superior to those of the bank. We do not agree with this contention. It was not necessary for the respondent to trace the funds which it advanced into the construction work. In *Hall & Olswang v. Aetna Cas. Co., supra,* the identical contention was made by a surety but was rejected by this court. We quote from the decision:

"Some contention is made in behalf of the surety company, rested upon the fact that the moneys advanced by the bank to the contractor, have not been traced, as having actually been paid for labor or material in the construction of the building in question. Since we have arrived at the conclusion, as above indicated, that neither the labor and material claimants nor the surety company have any right whatever in the $2,005 here in question remaining in the hands of the district, we think it wholly immaterial as to whether or not the bank has traced its advances to the contractor, or any part thereof, as having been used in payment of labor or material going into the construction of the building in question."

■ As stated in their joint brief, it is the position of the appellants that laborers and materialmen whose labor and material go into the performance of a public contract, and the surety who gives bond for such performance and guarantees the payment of such labor and material, have a *superior equity,* by virtue of their relationship, to have the funds earned by the performance of such labor and the furnishing of such material applied in payment of such efforts, and that the rights of simple contract creditors whose money did not enter into the performance of the contract are secondary.

In support of their position, appellants cite a number of cases from this court wherein it was held that, where the

owner of property makes payment upon a contract let by him for the construction or improvement of a building, and the payment passes to a materialman having notice of the contract and the source of the payment, the materialman cannot divert the proceeds of the payment to other accounts of the contractor or apply them to debts which the surety on the contractor's bond is not obligated to pay, but must apply them in such a way as will relieve the surety from further liability therefor.

We do not have that exact situation here. Nees, the contractor, received no money from the county, whose property was being improved; nor did the contractor pay to the respondent bank any money received by him from the county; nor was the bank in the position of a materialman who endeavors to apply the payment to other accounts or upon a debt for which the bonding company is not liable. The bank is not applying funds at all, in the sense used in the cases cited by the appellant. Instead, it is asserting its legal right to the funds under an assignment thereof executed by the contractor, for value, to secure advances made by the bank, without notice of any prior rights to funds to be earned under the construction contract. The situation of the bank is more nearly that of the prevailing parties in *Dowling v. Seattle,* 22 Wash. 592, 61 Pac. 709, *Maryland Cas. Co. v. Washington Nat. Bank,* 92 Wash. 497, 159 Pac. 689, *Northwestern Nat. Bank v. Guardian Cas. & Guaranty Co.,* 93 Wash. 635, 161 Pac. 473, and *Maryland Cas. Co. v. Hill,* 100 Wash. 289, 170 Pac. 594, wherein it was held, in effect, that an assignment such as the bank here holds constituted a valid appropriation of funds earned by a contractor under a public contract.

In the *Northwestern National Bank* case, *supra,* the court said:

"We find no merit in the claim that the bonding company has a superior equity in this fund over that of the bank. It has no equity in the fund as against the bank, which paid its money on the strength of assignments of the fund at a time when the contractors had full right to collect and dispose of the fund as they saw fit."

Appellants lay some stress upon the case of *Indemnity Ins. Co. v. Nelson,* 173 Wash. 294, 22 P. (2d) 984, as supporting their contention. It is true that, in that case, the court rested its decision partly upon a statement to the effect that to permit an assignee of a contractor to take practically all of the funds derived from the performance of the contract would destroy the purpose and intent of Rem. Rev. Stat., § 1159, which requires a contractor doing public work to furnish a bond with surety, conditioned that such contractor shall faithfully perform the contract and pay all laborers, mechanics, subcontractors, and materialmen. However, the contract in that case specifically provided that the contractor should not, either legally or equitably, assign any of the moneys payable under the contract, or his claims thereto, unless with the consent of the city. It is clear from that opinion that the main ground for the decision was the fact that the contract contained the prohibitive provision. This is further borne out by the fact that in its opinion in the *Indemnity Ins. Co.* case, *supra,* the court distinguished that case from the *Hall & Olswang* case, *supra,* by pointing out that, in the *Hall & Olswang* case, (1) it did not appear that the contract provided against assignments by the contractor of moneys falling due, and (2) the public body accepted the assignment. The situation in the case at bar is exactly the same, in those respects, as that in the *Hall & Olswang* case, and exactly opposite from that in the *Indemnity Ins. Co.* case. Under the facts of the present case, we do not think it is controlled by the *Indemnity Ins. Co.* case.

Finally, appellants contend that the construction contract is entire and indivisible, without provision for payment as the work progressed, and hence the contractor, assignor of the bank, would not be entitled to receive partial payments. From this it is deduced that the assignee of the contractor likewise would not be entitled to receive such payments.

From the record before us, it is reasonably clear that appellants did not raise that question in the trial court, and the point could be disposed of on that ground alone.

*Powers v. Munson,* 74 Wash. 234, 133 Pac. 453; *In re Corneliusen's Estate,* 182 Wash. 488, 47 P. (2d) 843; *Fisch v. Marler,* 1 Wn. (2d) 698, 97 P. (2d) 147; *Lawson v. Helmich,* 20 Wn. (2d) 167, 146 P. (2d) 537, 151 A. L. R. 930.

■ Aside from that, however, we are satisfied that the record does sufficiently show that the construction contract called for progressive payments on estimates. In making this statement, we do not take into consideration the plans and specifications which were never introduced at the trial, but which respondent endeavors to bring before this court in its brief.

The office engineer of the county testified that, at the time Nees breached the contract, there was due him the sum of $3,102 for work performed and that fifteen per cent, amounting to $465.30, was to be withheld. At the trial, during the time when counsel were endeavoring to stipulate the facts, respondent's counsel made the statement that, prior to the commencement of this action, the county was about to issue its voucher to the bank for the moneys earned by the contractor, but when the various claims began coming in the prosecuting attorney for the county held up the issuance of such voucher. That statement was never denied by appellants' counsel. Furthermore, appellants themselves seem to have recognized that payments might and would be made on the contract, for the conditional assignment from the contractor to the bonding company provided that it was to cover "all payments due or to become due under the contract."

In conclusion, we will say that, in our opinion, the equities do not lie with the bonding company. It could have protected itself against any possible future assignment to the bank by making its own assignment from Nees absolute, instead of conditional, and, whether absolute or conditional, giving notice thereof to the county at the time it approved the construction contract and filed its bond. This it did not do, but, rather, by its failure so to do, permitted the bank to take a valid legal assignment, without notice of any prior rights, and advance moneys on the security thereof.

So far as the appellant Premier Investment Company, assignee of the lien claimants, is concerned, it is nowise injured, for it has not only received the amount of the fifteen per cent reserve fund, but also has judgment against the bonding company for the balance of the amount of the claims held by it.

The judgment herein is affirmed.

DRIVER, C. J., MILLARD, SIMPSON, and MALLERY, JJ., concur.

